CBM2014-00015

Date:  May 21, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————

AGILYSYS, INC., ET AL.
Petitioner

v.

AMERANTH, INC.
Patent Owner

———————

Case CBM2014-00015
U.S. Patent No. 6,384,850 B1

———————

**PATENT OWNER AMERANTH'S NOTICE OF APPEAL**

RECEIVED 2015 MAY 21 PM 2: 11 US COURT OF APPEALS FEDERAL CIRCUIT

NOTICE IS HEREBY GIVEN that Ameranth, Inc. (Patent Owner), hereby appeals to the United States Court of Appeals for the Federal Circuit from the Final Written Decision in Case CBM2014-00015 that was entered on March 20, 2015 (Paper 36), and from all underlying findings, orders, decisions, rulings, and opinions in that Covered Business Method proceeding before the Patent Trial and Appeal Board.

Patent Owner further states, per 37 C.F.R. § 90.2(a)(3)(ii), that the issues presented on this appeal include, but are not limited to: The decision of the Patent Trial and Appeal Board in the underlying proceeding that claims 1-11 of U.S. Patent No. 6,384,850 B1 are unpatentable under 35 U.S.C. § 101, along with any appealable finding, conclusion, or determination related in any way to that decision, and any other appealable issues decided adversely to Patent Owner in any orders, decisions, rulings, or opinions in CBM2014-00015.

A copy of this Notice of Appeal is being concurrently filed with the Patent Trial and Appeal Board, and three copies of this Notice of Appeal, plus the required docketing fees, are being filed with the Clerk's Office of the United States Court of Appeals for the Federal Circuit.

May 21, 2015                                    Respectfully Submitted,

/John W. Osborne/
John W. Osborne
Lead Counsel for Patent Owner
USPTO Reg. No. 36,231
OSBORNE LAW LLC
33 Habitat Lane
Cortlandt Manor, NY 10567
josborne@osborneipl.com
Tel.: 914-714-5936
Fax: 914-734-7333

Michael D. Fabiano
Back-up Counsel for Patent Owner
USPTO Reg. No. 44,675
FABIANO LAW FIRM, P.C.
12526 High Bluff Drive, Suite 300
San Diego, CA 92130
mdfabiano@fabianolawfirm.com
Tel.: 619-742-9631

## CERTIFICATE OF FILING AND SERVICE

I certify that true and correct copies of the foregoing PATENT OWNER

AMERANTH'S NOTICE OF APPEAL were submitted, as set forth below, on

May 21, 2015.

| | |
|---|---|
| Director of the U.S. Patent and Trademark Office c/o Office of the General Counsel United States Patent and Trademark Office Madison Building East, Room 10-B-20 600 Dulany Street Alexandria, VA 22314 | 1 copy, via hand delivery |
| Patent Trial and Appeal Board, U.S. Patent and Trademark Office | 1 copy, electronically via PRPS |
| Clerk of Court, U.S. Court of Appeals for the Federal Circuit 717 Madison Place, N.W. Washington, DC 20439 | 3 copies, plus filing fees, via hand delivery |
| Richard S. Zembek Norton Rose Fulbright US LLP  Counsel for Petitioner | 1 copy, via e-mail, per the parties' service agreement |
| Gilbert A. Greene Norton Rose Fulbright US LLP  Counsel for Petitioner | 1 copy, via e-mail, per the parties' service agreement |

May 21, 2015                           */s/ Michael D. Fabiano /*
                                    Michael D. Fabiano

**ORIGINAL**

**RECEIPT FOR PAYMENT**

# United States Court of Appeals
# For The Federal Circuit

OFFICE OF THE CLERK

Received From _Same Day Process Service, Inc._
(NAME)

_Washington, DC_
(ADDRESS)

_5/28/15_
(DATE)

## NON-APPROPRIATED ACCOUNT

|  | AMOUNT | |
|---|---|---|
| Admission Fee | | |
| _Filing Fee CBM2014-00015_ | 500 | 00 |
| | | |
| Duplicate Cert. of Admission | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| Clerk ☐ | | |
| Deputy Clerk ☑ _JW 5767_ | TOTAL 500 | 00 |
| ☐ | | |

Cash ☐   Check ☑   MONEY

29899          1538

Standard Register ®

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

**AMERANTH, INC.**
**Patent Owner/Appellant**

**v.**

**AGILYSYS, INC., ET AL.**
**Petitioner/Appellee**

**Proceeding No:  CBM2014-00015**

## NOTICE FORWARDING CERTIFIED LIST

A Notice of Appeal to the United States Court of Appeals for the

Federal Circuit was timely filed on May 21, 2015 in the United States Patent

and Trademark Office in connection with the above identified Covered

Business Method (CBM) Review proceeding.  Pursuant to 35 U.S.C. § 143,

a Certified List is this day being forwarded to the Federal Circuit.

July 1, 2015                    Respectfully submitted,

                               Under Secretary of Commerce for Intellectual
                               Property and Director of the United States
                               Patent and Trademark Office


                          By: _Laura J. Peterson_____
                               Laura J. Peterson
                               Paralegal Specialist
                               Mail Stop 8, P.O. Box 1450
                               Alexandria, Virginia 22313-1450
                               571-272-9035

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the

foregoing has been served on Appellant and Appellee this 1st day of July,

2015, as follows:

John W. Osborne
Osborne Law LLC
josborne@osborneipl.com

Richard S. Zembek
Norton Rose Fulbright US LLP
richard.zembek@nortonrosefulbright.com


Laura J. Peterson
Paralegal Specialist
U.S. Patent & Trademark Office
Office of the Solicitor
P.O. Box 1450
Alexandria, VA  22313

# U.S. DEPARTMENT OF COMMERCE
## United States Patent and Trademark Office

July 1, 2015

THIS IS TO CERTIFY that the attached document is a list of the papers that comprise the record before the Patent Trial and Appeal Board (PTAB) for the *Covered Business Method Review* proceeding identified below:

**AGILYSYS, INC. ET AL.**
**Petitioner**

**v.**

**AMERANTH, INC.**
**Patent Owner**

**Case:  CBM2014-00015**
**Patent 6,384,850 B1**

By authority of the
DIRECTOR OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE

*Laura J. Peterson*

*Certifying Officer*

## Prosecution History for CBM2014-00015

| Filing Date | Document |
|---|---|
| 10/15/2013 | Petition for Covered Business Method Review |
| 10/15/2013 | Petitioner's Power of Attorney |
| 10/15/2013 | Petitioner's Mandatory Notices |
| 10/23/2013 | Notice of Filing Date Accorded to Petition |
| 10/30/2013 | Petitioner's Notice in Response to Identification of Defect |
| 11/04/2013 | Patent Owner's Power of Attorney |
| 11/05/2013 | Patent Owner's Mandatory Notices |
| 11/08/2013 | Amended Petition for Covered Business Method Review |
| 11/13/2013 | Notice of Accepting Corrected Petition |
| 01/13/2014 | Patent Owner's Preliminary Response |
| 02/11/2014 | Order - Conduct of the Proceedings § 42.05 |
| 02/18/2014 | Petitioner's Notice of Re-Designating Lead and Backup Counsel |
| 03/07/2014 | Petitioner's Notice Regarding Substitute Powers of Attorney |
| 03/10/2014 | Order - Conduct of the Proceeding § 42.5 |
| 03/12/2014 | Petitioner's Motion to Reconstitute Petitioner |
| 03/17/2014 | Patent Owner's Opposition to Motion to Reconstitute Petitioner |
| 03/21/2014 | Petitioner's Reply to Opposition to Motion to Reconstitute Petitioner |
| 03/24/2014 | Decision - Motion to Reconstitute Petitioner |
| 03/26/2014 | Decision - Institute Covered Business Method Review |
| 03/26/2014 | Scheduling Order |
| 03/28/2014 | Petitioner's Notice Re-Designating Lead and Backup Counsel |
| 04/11/2014 | Joint Notice In Advance of Initial Conference Call |
| 04/16/2014 | Order - Conduct of the Proceedings § 42.05 |
| 04/28/2014 | Joint Notice of Stipulated Amendment to Trial Schedule |
| 06/17/2014 | Petitioner's Mandatory Notices |
| 07/18/2014 | Patent Owner's Response to Petition |
| 09/18/2014 | Petitioner's Reply to Response to Petition |
| 09/19/2014 | Patent Owner's Request for Oral Hearing |
| 10/06/2014 | Order - Trial Hearing Notice |
| 10/21/2014 | Petitioner's Notice of Filing Demonstrative Exhibits |
| 11/06/2014 | Order - Conduct of the Proceedings § 42.5 |
| 11/12/2014 | Petitioner's Mandatory Notices |
| 12/31/2014 | Oral Hearing Transcript |
| 01/30/2015 | Petitioner's Mandatory Notices |
| 03/20/2015 | Final Written Decision |

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

AGILYSYS, INC. ET AL.,
Petitioner

v.

AMERANTH, INC.,
Patent Owner
_____

Case CBM2014-00015
Patent No. 6,384,850 B1
_____

Before JAMESON LEE, MEREDITH C. PETRAVICK, and
NEIL T. POWELL, *Administrative Patent Judges.*

PETRAVICK, *Administrative Patent Judge.*

FINAL WRITTEN DECISION
Covered Business Method Patent Review
*35 U.S.C. § 328(a) and 37 C.F.R. § 42.73*

CBM2014-00015
Patent 6,384,850 B1

# I. INTRODUCTION

Agilysys, Inc. and other entities[1] (collectively, "Petitioner") filed a
Petition (Paper 9, "Pet.") requesting review under the transitional program
for covered business method patents of claims 1–16 of U.S. Patent No.
6,384,850 B1 (Ex. 1031, "the '850 patent", issued May 7, 2002).  On March
26, 2014, pursuant to 35 U.S.C. § 324, we instituted this trial as to claims 1–
11 on only one proposed ground of unpatentability, 35 U.S.C. § 101 (Paper
20, "Dec. to Inst.").  We did not institute as to claims 12–16 on any of the
grounds proposed in the Petition.  Ameranth, Inc. ("Patent Owner") filed a
Patent Owner Response (Paper 27, "PO Resp.") and Petitioner filed a Reply
(Paper 28, "Reply").

An oral hearing in this proceeding was held on October 24, 2014.  A
transcript of the hearing is included in the record (Paper 34, "Tr.").  The oral
hearing was consolidated with the oral hearing for related CBM2014-00016
and CBM2014-00013.

We have jurisdiction under 35 U.S.C. § 6(c).  This Final Written
Decision is issued pursuant to 35 U.S.C. § 328(a) and 37 C.F.R. § 42.73.

---

[1] Expedia, Inc.; Fandango, LLC; Hotel Tonight, Inc.; Hotwire, Inc.;
Hotels.com, L.P.; Kayak Software Corp.; Live Nation Entertainment, Inc.;
Oracle Corp.; Orbitz, LLC; Opentable, Inc.; Papa John's USA, Inc.;
Stubhub, Inc.; Ticketmaster, LLC.; Travelocity.com LLP; Wanderspot LLC;
Pizza Hut, Inc.; Pizza Hut of America, Inc.; Domino's Pizza, Inc.; Domino's
Pizza, LLC; Grubhub Holdings, Inc.; Order.in, Inc.; Mobo Systems, Inc.;
Starbucks Corporation; Eventbrite, Inc.; Best Western International, Inc.;
Hilton Resorts Corp.; Hilton Worldwide, Inc.; Hilton International Co.;
Hyatt Corporation; Marriott International, Inc.; Starwood Hotels & Resorts
Worldwide, Inc.; Usablenet, Inc.; and Apple, Inc.

2

CBM2014-00015
Patent 6,384,850 B1

For the reasons that follow, we determine that Petitioner has shown by a preponderance of the evidence that claims 1–11 of the '850 patent are unpatentable.

### A. The '850 Patent

The '850 patent, titled "Information Management and Synchronous Communications System with Menu Generation," issued on May 7, 2002, based on Application No. 09/400,413, filed on September 21, 1999. Ex. 1031, 1.

The '850 patent discloses a "desktop software application that enables the rapid creation and building of a menu." *Id.* at col. 3, ll. 15–17. Figure 1 of the '850 patent is reproduced below.



Figure 1 depicts a graphical user interface ("GUI")
that is used to generate a menu.

GUI 1 includes menu tree window 7, modifiers window 8, and sub-modifiers window 9. *Id.* at col. 6, ll. 26–32. Menu tree window 7 includes hierarchical tree structure 2 that shows the relationships between menu

CBM2014-00015
Patent 6,384,850 B1

categories, such as salads or desserts; menu items, such as caesar salad or
green salad; menu modifiers, such as dressing; and menu sub-modifiers,
such as ranch or bleu cheese. *Id.* at col. 6, ll. 13–21. A user generates a
menu using GUI 1 to add or delete menu categories, menu items, modifiers,
and sub-modifiers, and to link modifiers and sub-modifiers to menu items in
hierarchical tree structure 2. *Id.* at col. 6, l. 35–col. 8, l. 20. After the new
menu is generated, it can be previewed and downloaded to wireless
handheld devices and Web pages. *See id*. at col. 3, ll. 59–64; col. 6, ll. 22–
25; col. 7, ll. 12; col. 8, ll. 45–51; col. 9, l. 66–col. 10, l. 1.

*B. Illustrative Claim*

Of the challenged claims, claim 1 is independent and is illustrative of
the claims at issue. Claim 1 is reproduced below:

> 1. An information management and synchronous
> communications system for generating and
> transmitting menus comprising:
>
> a. a central processing unit,
>
> b. a data storage device connected to said
> central processing unit,
>
> c. an operating system including a graphical
> user interface,
>
> d. a first menu consisting of menu categories,
> said menu categories consisting of menu items,
> said first menu stored on said data storage
> device and displayable in a window of said
> graphical user interface in a hierarchical tree
> format,
>
> e. a modifier menu stored on said data storage
> device and displayable in a window of said
> graphical user interface,

4

CBM2014-00015
Patent 6,384,850 B1

> f. a sub-modifier menu stored on said data
> storage device and displayable in a window of
> said graphical user interface, and
>
> g. application software for generating a second
> menu from said first menu and transmitting said
> second menu to a wireless handheld computing
> device or Web page,

wherein the application software facilitates the
generation of the second menu by allowing
selection of cat[e]gories and items from the first
menu, addition of menu categories to the second
menu, addition of menu items to the second menu
and assignment of parameters to items in the
second menu using the graphical user interface of
said operating system, said parameters being
selected from the modifier and sub-modifier
menus.

*C. Related Proceedings*

Both parties identify numerous related ongoing district court
proceedings. Pet. 12–16; Paper 8, 4–5; Paper 26, 1.

In addition, Petitioner requested covered business method patent
review of the following related patents: U.S. Patent No. 6,871,325
(CBM2014-00016) and U.S. Patent No. 6,982,733 (CBM2014-00013). We
instituted covered business method patent review in CBM2014-00016 and
CBM2014-00013, and final written decisions in those proceedings are
entered concurrently with this decision.

Petitioner also requested covered business method patent review of
related U.S. Patent No. 8,146,077 (CBM2014-00014). We did not institute
covered business method patent review in CBM2014-00014.

5

CBM2014-00015
Patent 6,384,850 B1

### D. Alleged Ground of Unpatentability

Petitioner alleges that claims 1–11 are unpatentable under 35 U.S.C. § 101.


## II. ANALYSIS

### A. Arguments Incorporated By Reference

In footnote 11 on pages 11–12 of the Patent Owner Response, Patent Owner attempts to incorporate certain arguments made in its Preliminary Response (Paper 11) into the Patent Owner Response. Our rules prohibit incorporating arguments by reference. Section 42.6(a)(3) of our rules states: "[a]rguments must not be incorporated by reference from one document into another document." Incorporation by reference circumvents our rule limiting the pages in the Patent Owner response to 80 pages. *See* 37 C.F.R. § 42.24(b)(2). Arguments that are not developed and presented in the Patent Owner Response, itself, are not entitled to consideration. *See* Paper 21, 3 (cautioning Patent Owner "that any arguments for patentability not raised and fully briefed in the response will be deemed waived.").


### B. Claim Construction

The Board interprets claims of unexpired patents using the broadest reasonable construction in light of the specification of the patent in which they appear. 37 C.F.R. § 42.300(b). Under the broadest reasonable construction standard, claim terms are given their ordinary and customary meaning, as would be understood by one of ordinary skill in the art in the context of the entire disclosure. *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007). Any special definition for a claim term must be set

6

CBM2014-00015
Patent 6,384,850 B1

forth with reasonable clarity, deliberateness, and precision. *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994). In the absence of such a definition, limitations are not to be read from the specification into the claims. *In re Van Geuns*, 988 F.2d 1181, 1184 (Fed. Cir. 1993).

Prior to construing the relevant claim limitations, we turn to some initial matters raised by Patent Owner. First, Patent Owner argues that we must construe "the entirety of the challenged claims" (PO Resp. 29), and proposes constructions for some, but not all, limitations of the challenged claims (*see id.* at 33–35). Claim construction, however, "is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Servs. L.L.C. v. Sun Life Assur. Co. of Canada (U.S.), L.L.C.,* 687 F.3d 1266, 1273 (Fed. Cir. 2012); *see, e.g.*, *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) (only those terms that are in controversy need to be construed, and only to the extent necessary to resolve the controversy). Below, we construe the limitations that are relevant to the issues of patent-eligibility discussed below. We determine that all other claim limitations need no explicit construction.

Second, Patent Owner urges us to adopt all previous judicial constructions and, in particular, the constructions of United States District Court for the Eastern District of Texas Marshall Division (*see* Ex. 2014–2016). PO Resp. 28. Petitioner also relies upon previous judicial constructions (*see* Ex. 2017) to support its arguments. *See* Reply 4. The standard for claim construction in a district court infringement action, however, is different than the standard applied by the Board. *See In re Morris,* 127 F.3d 1048, 1053–54 (Fed. Cir. 1997). In covered business method patent review proceedings, the Board applies the broadest

CBM2014-00015
Patent 6,384,850 B1

reasonable construction consistent with the specification. 37 C.F.R. § 42.300(b); *see also SAP Am., Inc. v. Versata Dev. Grp, Inc.*, Case CBM2012-00001, slip op. at 7–18 (PTAB June 11, 2013) (Paper 70) (discussing adoption of the broadest reasonable interpretation standard).

### i. Preamble

The preamble of claim 1 recites "[a]n information management and synchronous communications system for generating and transmitting menus." Petitioner and Patent Owner dispute whether the preamble limits the claim. Reply 1–8; PO Resp. 34–35.

Patent Owner argues that the preamble is limiting because "[t]erms are recited in the preamble which do not appear in the remainder of the claims and 'synchronous communications system' is necessary to define the synchronization functionality of the first menus and the second menus on the back[-]office server (central database) and the handheld device/Web pages." PO Resp. 35. According to Patent Owner, the preamble should be construed as "a computerized system having multiple devices in which a change to data made on a central server is updated on client devices and vice versa." *Id*. at 32; *see id*. at 34–35. Patent Owner also argues that the preamble is limiting because the Specification describes that a synchronous communications system is important (*id*. (citing Ex. 1031, Title, Abstract, col. 3, ll. 9–15, 59–67)), and because the Examiner relied upon the preamble during prosecution to distinguish over the prior art (*id*.).

Petitioner argues that the preamble is non-limiting because the preamble does not recite any structural components not captured in the body of the claim and "merely sets forth the purpose ('information management and synchronous communication') and intended use ('for generating and

8

CBM2014-00015
Patent 6,384,850 B1

transmitting menus') of the claimed invention."  Reply 3–5.  Petitioner

argues that Patent Owner's proposed construction improperly reads in a

distributed system that includes a central server and client devices and

improperly excludes a preferred desktop PC embodiment from the claims.

Reply 6–7.  Petitioner further argues that, contrary to Patent Owner's

assertion, the Examiner did not rely upon the preamble to distinguish over

the prior art.  *Id.* at 5.

"In general, a preamble limits the invention if it recites essential

structure or steps, or if it is 'necessary to give life, meaning, and vitality' to

the claim."  *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,* 289 F.3d

801, 808 (Fed. Cir. 2002) (citing *Pitney Bowes Inc. v. Hewlett-Packard Co.,*

182 F.3d 1298, 1305 (Fed. Cir. 1999)).  A preamble, however, is not limiting

where the claim body defines a structurally complete invention and the

preamble only states a purpose or intended use for the invention.  *Id.*

The body of claim 1 recites a system that includes a central processing

unit ("CPU"), a data storage device, an operating system with a GUI, a first

menu, a modifier menu, a sub-modifier menu, and application software.

Ex. 1031, col. 14, l. 48–col. 15, l. 11.  The application software is recited as

"for generating a second menu from said first menu" and the wherein clause

further defines how the second menu is generated from the first menu.  *Id*. at

col. 15, ll. 1–11.  The application software is recited, further, as "for . . .

transmitting said second menu to a wireless handheld computing device or

Web page."  *Id*. at col. 15, l. 1–2.

As can be seen from the above, the body of claim 1 recites a

structurally complete invention; one that corresponds to the embodiment that

has a desktop PC and a menu configuration application described in the

9

CBM2014-00015
Patent 6,384,850 B1

Specification at column 6, line 9 thru column 8, line 62 and depicted in Figure 1. *See also* Ex. 1031, col. 3, ll. 35–41 (describing the present invention as a software tool for building a menu, modifying a menu, and downloading it to a handheld device or Web Page). As described in the Specification, a menu is updated using the GUI of the menu configuration application and, then, the updated menu is downloaded to a connected handheld device by clicking on a "Download Database" item or icon in GUI 1. Ex. 1031, col. 8, ll. 45–62; *see also id*. at col. 3, ll. 35–37; col. 6, ll. 22–25; col. 7, ll. 12. Thus, the updated menu is the same on the desktop PC and the handheld device. At the oral hearing, Patent Owner indicated that downloading is synchronizing, as "[i]t's making something the same with something else." *See* Tr. 28.

For these reasons, we agree with Petitioner that the preamble is non-limiting because it does not recite any structural components not already captured in the body of the claim and merely sets forth the purpose and intended use of the claimed invention. Also, the body of the claim already possesses life, meaning and vitality, without importing anything from the preamble.

We further are not persuaded by Patent Owner's argument that the preamble is limiting because the argument is based upon a proposed construction that is overly narrow. Patent Owner's proposed construction implies that a synchronous communication system requires a central back-office server that communicates data updates to and from multiple client devices, similar to those recited in non-instituted claim 12. Although the Specification describes communication between a central back-office server and client devices (*e.g., see* Ex. 1031, col. 11, ll. 12–42), we see nothing in

10

CBM2014-00015
Patent 6,384,850 B1

the Specification, and Patent Owner points to nothing, that suggests that a synchronous communication system is required to include these elements. Patent Owner's proposed construction attempts to import these extraneous elements from the Specification into the claim. If a feature is not necessary to give meaning to what the inventor means by a claim term, it would be "extraneous," and should not be read into the claim. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998); *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co*., 849 F.2d 1430, 1433 (Fed. Cir. 1988).

Further, we are not persuaded by Patent Owner's argument that the preamble is limiting because the Examiner relied upon the preamble during prosecution to distinguish over the prior art, as evidenced by the Examiner's reasons for allowance (PO Resp. 35). Clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art may transform the preamble into a claim limitation. *Catalina*, 289 F.3d at 808. However, in this case, the Examiner's reasons for allowance do not show that the preamble was relied upon clearly during the prosecution. Contrary to the Patent Owner's argument, the Examiner's reasons for allowance indicate that the claimed sub-modifier menu and the claimed application software are the uniquely distinct features, and not the synchronous communication system of preamble. Ex. 1035, 7.

For the reasons discussed above, we are persuaded by Petitioner that the preamble is non-limiting.

*ii. "central processing unit"*

Claim 1 recites a "central processing unit." Patent Owner proposes that CPU be construed as a "central server." PO Resp. 32, 35–36.

11

CBM2014-00015
Patent 6,384,850 B1

According to Patent Owner, its construction takes into account "the
centralized nature of the control over the recited menu generation and
synchronous transmission functionally of the central processing unit"
described in the Specification. *Id*. at 35.

Petitioner argues that there is nothing in the "intrinsic evidence [that]
offers any alternative definition of this common technical term" and argues
that Patent Owner's proposed construction is contrary to the Specification,
which equates the CPU to a microprocessor. Reply 7–8 (citing Ex. 1031,
col. 5, ll. 37–39, 48–49). Petitioner proposes that CPU should be construed
according to its ordinary and customary meaning, which is "the
computational and control unit of a computer." Pet. 40–41 (citing
Microsoft Computer Dictionary, 115 (4th ed. 1999)).

We are persuaded by Petitioner that the broadest reasonable
construction in light of the Specification of the term CPU is the
computational and control unit of a computer. Petitioner's construction is
consistent with the Specification, which describes that the system of the '850
patent uses typical hardware elements in the form of a computer workstation
and that "a typical workstation platform includes hardware such as a central
processing unit ('CPU'), e.g., a Pentium® microprocessor." Ex. 1031,
col. 5, ll. 34–40; *see also id*. at col. 5, ll. 48–49 ("a CPU, e.g., Pentium ®
microprocessor"). Further, as discussed above, the Specification discloses
using a desktop PC to generate and downloads menus to a connected
handheld device (*see id*. at col. 6, l. 22–col. 8, l. 62), as well as, discloses the
use of a central back-office server (*e.g., see id*. at col. 2, ll. 29–33). Patent
Owner's proposed construction improperly reads into the claims the central

CBM2014-00015
Patent 6,384,850 B1

back-office server. *See Renishaw,* 158 F.3d at 1249 (explaining that extraneous features should not be read into the claims).

For these reasons, we determine that the broadest reasonable construction, in light of the Specification, of CPU is the computational and control unit of a computer.

### iii. "Web page"

Neither Petitioner nor Patent Owner contests the construction of the term "Web page" in the Decision to Institute. *See* PO Resp. 33, 37. We construed Web page to mean "a document with associated files for graphics, scripts, and other resources, accessible over the internet and viewable in a web browser." Dec. on Inst. 8–9.

### iv. "menu"

Patent Owner proposes that menu should be construed as "computer data representing collections of linked levels of choices or options intended for display in a graphical user interface." PO Resp. 33, 38–39 (citing a construction by a district court; *see* Ex. 2014, 11–12). Patent Owner, however, provides no analysis as to why the district court's construction is the broadest reasonable construction in light of the Specification. PO Resp. 33, 38–39. Petitioner does not propose an alternate construction of menu, but argues that the claim terms should be given their ordinary and customary meaning. Pet. 39–40.

We are not persuaded by Patent Owner that its proposed construction is the broadest reasonable construction in light of the Specification. We see nothing in the Specification, and Patent Owner does not point to anything in the Specification, that provides support for Patent Owner's proposed construction, in particular that the menus have a "linked levels" feature.

CBM2014-00015
Patent 6,384,850 B1

Although the Specification discloses some menus that are linked to additional menus, this "linked levels" feature is extraneous and should not be read from the Specification into the claim. *See* Ex. 1031, col. 5, ll. 23–33 ("File options *can have* additional subordinate or child options associated with them. *If* a file option having a subordinate option is selected . . ." (emphases added)).

We give "menu" its ordinary and customary meaning. RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY defines menu as "a list of options available to a user, as displayed on a computer or TV screen." RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY, 520 (2nd ed. 1997). This definition is consistent with the Specification, which describes menus as providing choices or options in a GUI. *See* Ex. 1031, col. 5, ll. 17–20; *see* Fig. 1 (depicting a menu, a modifier menu, and a sub modifier menu).

For these reasons, we determine that the broadest reasonable construction, in light of the Specification, of "menu" is a list of options available to a user displayable on a computer.

*v. "the second menu is capable of being displayed on the display screen of a wireless computing device"*

Claim 3 depends from claim 1 and recites "wherein the second menu is capable of being displayed on the display screen of a wireless computing device." Patent Owner argues that this limitation should be construed as "capability to display the second menu on the display screen of a wireless *handheld* computing device." PO Resp. 34 (emphasis added). According to Patent Owner, the recitation of "a wireless computing device" is a reference to the "wireless handheld computing device" that is recited in claim 1, and, therefore, should not be construed to encompass a wireless laptop or desktop PC. *Id*. at 40–41. Petitioner argues that claim 3 should not be rewritten to

14

CBM2014-00015
Patent 6,384,850 B1

include the term handheld and that "if the wireless device of claim 3 were a reference to the wireless handheld device of claim 1, claim 3 would have used the definite article 'the' rather than reciting '*a* wireless computing device.'"  Reply 14 (emphasis original).

We are persuaded by Petitioner that the recitation of "a wireless computing device" in claim 3 does not require that the wireless computing device be handheld or preclude a wireless laptop or desktop PC.  Patent Owner's proposed construction again attempts to read extraneous features into the claim.  For these reasons, we determine that the broadest reasonable construction in light of the Specification of the recitation of "a wireless computing device" does not require that the wireless computing device be handheld.

*C. 35 U.S.C. § 101*

Petitioner challenges claims 1–11 of the '850 patent as claiming patent-ineligible subject matter under 35 U.S.C. § 101.  Pet. 56–77.  According to Petitioner, the claims are directed to the abstract idea of generating a menu and do not contain additional limitations that meaningfully limit the abstract idea to a practical application.  *Id.*

Patent Owner disagrees and contends that the claims are patent-eligible because they recite a machine and not an abstract idea and because they recite specialized software that synchronously generates and wirelessly transmits non-PC standard handheld menus comprised of multi-tiered levels of components.  PO Resp. 44–80.

CBM2014-00015
Patent 6,384,850 B1

*a. Section 101 Subject Matter Eligibility*

For claimed subject matter to be patentable-eligible, it must fall into one of four statutory classes set forth in 35 U.S.C. § 101:  a process, a machine, a manufacture, or a composition of matter.  The Supreme Court recognizes three categories of subject matter that are ineligible for patent protection:  "laws of nature, physical phenomena, and abstract ideas." *Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010) (internal quotations and citation omitted).  A law of nature or an abstract idea by itself is not patentable; however, a practical application of the law of nature or abstract idea may be deserving of patent protection.  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293–94 (2012).  To be patentable, however, a claim must do more than simply state the law of nature or abstract idea and add the words "apply it." *Id*.

In *Alice Corp. Pty, Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), the Supreme Court recently clarified the process for analyzing claims to determine whether claims are directed to patent-ineligible subject matter.  In *Alice*, the Supreme Court applied the framework set forth previously in *Mayo*, "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice,* 134 S. Ct. at 2355.  The first step in the analysis is to "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id*.  If they are directed to a patent-ineligible concept, the second step in the analysis is to consider the elements of the claims "individually and 'as an ordered combination'" to determine whether there are additional elements that "'transform the nature of the claim' into a patent-eligible application." *Id*. (quoting *Mayo*, 132 S. Ct. at

1291, 1297). In other words, the second step is to "search for an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id*. (alteration in original) (quoting *Mayo*, 132 S. Ct. at 1294). Further, the "prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity.'" *Bilski*, 130 S. Ct. at 3230 (quoting *Diamond v. Diehr*, 450 U.S. 175, 191–92 (1981)).

The patents at issue in *Alice* claimed a "method of exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk." *Alice*, 134 S. Ct. at 2356. Like the method of hedging risk in *Bilski v. Kappos*, 130 S. Ct. at 3240 — which the Court deemed "a method of organizing human activity" — *Alice's* "concept of intermediate settlement" was held to be "a fundamental economic practice long prevalent in our system of commerce." *Alice*, 134 S. Ct. at 2356. Similarly, the Court found that "[t]he use of a third-party intermediary . . . is also a building block of the modern economy." *Id*. "Thus," the Court held, "intermediate settlement . . . is an 'abstract idea' beyond the scope of § 101." *Id*.

Accordingly, utilizing this framework, we analyze claims 1–11 of the '850 patent to determine whether these claims are directed to patent-ineligible subject matter.

### b. Ineligible Concept

Petitioner argues that the claims are directed to the abstract idea of generating menus. Pet. 59–61. Patent Owner argues that the claims "are not

directed to an 'idea' at all; they are directed to a new machine." PO Resp. 46 (emphasis omitted).

Nominally, the claimed subject matter is a machine, which is one of the four categories of statutory subject matter. Statutory class, however, is not by itself determinative of whether a claim is directed to patent eligible subject matter. "Regardless of what statutory category ('process, machine, manufacture, or composition of matter,' 35 U.S.C. § 101) a claim's language is crafted to literally invoke, we look to the underlying invention for patent-eligibility purposes." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1374 (Fed. Cir. 2011); *see Alice,* 134 S. Ct. 2358–2359; *Bancorp Servs. v. Sun Life Assurance Co.*, 687 F.3d 1266, 1275 (Fed. Circ. 2012).

The claims recite a system that generates a second menu from a first menu by selecting menu categories and items from the first menu, adding menu categories and items to the second menu, and selecting parameters from modifier and sub-modifier menus to assign to items in the second menu. The claims also recite that the system transmits the second menu to a wireless handheld computing device or Web page.

As discussed in section I(A) above, the Specification discloses a user generating a menu by adding or deleting menu categories, such as salads or desserts; menu items, such as caesar salad or green salad; menu modifiers, such as dressing; and menu sub-modifiers, such as ranch or blue cheese to create the second menu. Ex. 1031, col. 6, l. 35–col. 8, l. 20. The Specification states:

> [w]hile the preferred embodiment of the invention includes the selection of items from a master menu wherein the master menu is displayed using a graphical user interface, it is to be appreciated that any means for displaying the master menu to the user and generating another menu in response to and

18

CBM2014-00015
Patent 6,384,850 B1

> comprised of the selections made is encompassed by the
> contemplated invention.

(*id*. at col. 13, ll. 52–58) and

> [t]he inventive concept encompasses the generation of a menu
> in any context known to those skilled in the art where an object
> is to facilitate display of the menu so as to enable selection of
> items from that menu. . . . Likewise, displaying menus
> generated in accordance with the invention on PDAs and Web
> pages to facilitate remote ordering are but a few examples of
> ways in which such menu might be used in practice. Any
> display and transmission means known to those skilled in the
> art is equally usable with respect to menus generated in
> accordance with the claimed invention.

(*id*. at col. 14, ll. 18–21).

Given the above, we determine that claim 1 is directed to the abstract idea of generating a second menu from a first menu and sending the second menu to another location.

### c. Inventive Concept

Next, we look for additional elements that can "transform the nature of the claim" into a patent-eligible application of an abstract idea. That is, we determine whether the claims include an "inventive concept," i.e., an element or combination of elements sufficient to ensure that the patent in practice amounts to significantly more than a patent on the abstract idea itself. *Alice*, 134 S. Ct. at 2357. The Supreme Court in *Alice* cautioned that merely limiting the use of abstract idea "to a particular technological environment" or implementing the abstract idea on a "wholly generic computer" is not sufficient as an additional feature to provide "practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself." *Alice*, 134 S. Ct. at 2358.

19

CBM2014-00015
Patent 6,384,850 B1

*i. Independent Claim 1*

Petitioner argues that the claims require nothing more than a general purpose computer using general purpose programming because the Specification, itself, discloses that the system of the '850 uses typical computer equipment and commonly known programming steps. *See* Pet. 59–65. Patent Owner argues that the claims recite specialized software that synchronously generates and wirelessly transmits non-PC standard handheld menus comprised of multi-tiered levels of components. PO Resp. 44–80.

Independent claim 1 recites a CPU, a data storage device, and an operating system with a GUI. As Petitioner argues (Pet. 62), the Specification states that "the present invention uses typical hardware elements in the form of a computer workstation, operating system and application software elements which configure the hardware elements for operation in accordance with the present invention." Ex. 1031, col. 5, ll. 34–38; *see also id.* at col. 11, ll. 43–48. CPUs and data storage devices are described as "typical hardware elements." Ex. 1031, col. 5, ll. 34–44. The Specification also discloses that the use of GUI operating systems, such as Microsoft Windows® and Window CE® for handheld wireless device, were known, and that GUIs were a known means for allowing a user to manipulate data. Ex. 1031, col. 4, l. 59–col. 5, l. 16. These claim elements require nothing more than a generic computer with generic computer elements performing generic computer functions. Merely reciting a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention. *Alice*, 134 S. Ct. at 2358.

Independent claim 1 also recites a first menu, a modifier menu, and sub-modifier menu stored on the data storage device and displayable in a

20

CBM2014-00015
Patent 6,384,850 B1

window of a GUI. The first menu is displayable in a hierarchical tree
format. The Specification discloses that the use of a data storage device to
store data is "typical" and the displaying of menus in a hierarchical format in
a GUI is "conventional." *See* Ex. 1031, col. 5, ll. 17–33, 39–40, 56–58; *see*
Pet. 62. The storing of menus on the data storage device is nothing more
than routine data gathering and does not transform the abstract idea into a
patent-eligible invention. *See CyberSource*, 654 F.3d at 1370. Further,
displaying menus in a GUI, including in a hierarchical format, is a well-
understood, routine, conventional activity that does not add significantly
more to the abstract idea. *Mayo*, 132 S. Ct. at 1298.

　　　Finally, independent claim 1 further recites application software that
functions to generate a second menu from a first menu by selecting menu
categories and items from the first menu, adding menu categories and items
to the second menu, and selecting parameters from modifier and sub-
modifier menus to assign to items in the second menu. The Specification
discloses that GUIs that display menus from which records can be created,
deleted, modified, or arranged are conventional. Ex. 1031, col. 4, l. 59–col.
5, l. 32, col. 5, l. 55–col. 6, l. 63; *see also id.* at col. 11, ll. 56–61 ("the
discrete programming steps are commonly known"). To add significantly
more to the abstract idea, additional features must be more than well-
understood, routine, conventional activity. *Mayo*, 132 S. Ct. at 1298. Using
a graphical user interface is a known way for a user to interact with the
computer and does not change the generic nature of the computer.

　　　The application software also functions to transmit the second menu
to a wireless handheld computing device or Web page. As discussed above
in section II(B)(i), the Specification discloses that the menu is transmitted to

21

CBM2014-00015
Patent 6,384,850 B1

the wireless handheld device and Web page by downloading. Ex. 1031, col. 8, ll. 45–62 (describing downloading the new menu to a connected PDA); *see also id*. at col. 3, ll. 35–39 col. 6, ll. 22–25; col. 7, ll. 12; col. 9, l. 65–col. 10, l. 1 (describing downloading the new menu to a wireless handheld device and Web page). Such downloading is merely a conventional post-solution activity. Conventional post-solution activity is not sufficient to transform the abstract idea into patent-eligible subject matter. *See Parker v. Flook*, 437 U.S. 584, 590–92 (1978).

Even when the claim elements are considered as a combination, they add nothing that is not already present when the elements are considered separately. *Alice*, 134 S. Ct. at 2359. Claim 1 conveys nothing more meaningful than the fundamental concept of generating a second menu from a first menu and sending the second menu to another location.

Upon review of Petitioner's analysis and supporting evidence and taking into account Patent Owner's arguments, discussed below, we are persuaded by Petitioner that claim 1 does not recite additional elements that transforms the claim into a patent-eligible application of an abstract idea.

We are not persuaded by Patent Owner's argument that this claim requires additional elements that transform the abstract idea into a patent-eligible application (PO Resp. 47–73) because it is based up on an overly narrow construction of the claimed elements, as discussed in section II(B) above, and is based on additional elements not recited or required by the claims. Patent Owner argues the claims "supply a new and useful application of the idea by virtue of the fact that they synchronously generate and wirelessly transmit out non PC standard handheld menus comprised of multi-tiered levels of components." *Id*. at 47.

CBM2014-00015
Patent 6,384,850 B1

Patent Owner's argument is based upon its overly narrow construction of the preamble of the claim and of the claimed CPU and menu.  As discussed above in section II(B), when given the broadest reasonable construction in light of the Specification, the claim elements do not require a central back-office server that updates changes to the menu on multiple client devices and vice versa, and do not require menus that have multi-tiered levels of components.

Further, Patent Owner's argument is based upon elements not recited or required by the claim.  Patent Owner implies that the claims require that second menu is transmitted "wirelessly" to the wireless handheld computing device.  *E.g., see id*. at 62.  Although the handheld computing device is describes as "wireless," the claims do not recite that the second menu is wirelessly transmitted to the handheld device, and do not preclude, for example, transmitting the second menu to a PDA (i.e., a wireless handheld computing device) via a wire and docking station, as described in the Specification (Ex. 1031, col. 8, ll. 51–56).  Patent Owner also implies that the claims require that the application software functions to configure the second menu so that it is in a non-PC standard graphical format (*e.g., see id.* at 49, 61–67) for the wireless handheld computing device.  However, no such limitations appear in the claims.  Other than dependent claim 8, discussed below, the claims are silent as to the format of the second menu.  Because Patent Owner's argument is based upon an overly narrow construction of the claim elements and is based upon additional elements not recited or required by the claims, we find them unpersuasive as to the patent-eligibility of the claims.

23

CBM2014-00015
Patent 6,384,850 B1

*ii. Dependent Claim 2*

Dependent claim 2 recites "wherein the second menu is a restaurant menu." Restaurant menus are conventional and well-known *(see* Ex. 1031, col. 14, ll. 18–24; *see also* Pet. 60 (citing Ex. 1031, col. 1, ll. 23–27)) and do not add significantly more to the abstract idea so as to make the claim patent-eligible. *Mayo*, 132 S. Ct. at 1298. Patent Owner makes no argument directed, specifically, to the additional element recited by claim 2. *See* PO Resp. 73–76. Upon review of Petitioner's analysis and supporting evidence, we are persuaded by Petitioner that claim 2 does not recite additional elements that transform the claim into a patent-eligible application of an abstract idea.

*iii. Dependent Claims 3, 6, 7, and 10*

Dependent claim 3 recites "wherein the second menu is capable of being displayed on the display screen of a wireless computing device." Dependent claim 6 recites "wherein the second menu is capable of being displayed on display screens of computers in a network." Claim 7 depends from claim 6 and recites "wherein the computer network is the internet." Dependent claim 10 recites "wherein the first menu and the second menu are both capable of being displayed in the same window on the display screen."

Petitioner argues that the Specification discloses that such computer equipment is "typical." Pet. 62; *see also* Pet. 60 (citing Ex. 1031, col. 1, ll. 30–33 (disclosing that digital wireless communication devices are in common use)). The Specification discloses that menus that can be displayed in windows of GUIs on a display screen of a computer are conventional. *See* Ex. 1031, col. 5, ll. 17–33, 55–63. The Specification also discloses that GUI operating systems, such as Microsoft Windows® and Windows CE® for

24

CBM2014-00015
Patent 6,384,850 B1

wireless handheld devices, are known. *Id*. at col. 5, ll. 6–10. The Specification further discloses that wireless computing devices, such as digital wireless messengers and pagers, portable laptops, and handheld devices, are in "common use." *Id*. at col. 1, ll. 30–33. Menus that are capable of being displayed on a wireless computing device or computers networked on the internet are conventional and well-known and, thus, do not add significantly more to the abstract idea so as to make these claims patent-eligible. *Mayo*, 132 S. Ct. at 1298. Further, the use of the internet to transmit menus also does not add significantly more to the abstract idea. *See CyberSource*, 654 F.3d at 1370 (reasoning that use of the Internet to verify credit card transaction does not add enough to the abstract idea of verifying the transaction).

Upon review of Petitioner's analysis and supporting evidence and taking into account Patent Owner's arguments, discussed below, we are persuaded by Petitioner that claims 3, 6, 7, and 10 do not recite additional elements that transforms the claims into a patent-eligible application of an abstract idea.

We are not persuaded by Patent Owner's argument that claims 3 and 10 recite additional elements that transform the abstract idea into a patent-eligible application (PO Resp. 73–74) because they are based upon an overly narrow construction of the claim. Patent Owner argues that claim 3 requires the wireless computing device to be a *handheld* wireless computing device and that claim 3, thus, requires that the second menu be configured into a non-conventional format. PO Resp. 73–74. However, as discussed in section II(B)(v), claim 3 contains no such requirement. Patent Owner also argues that claim 10 is directed to an inventive preview function that

25

CBM2014-00015
Patent 6,384,850 B1

requires that the second menu be previewed, on a back-end computer, in different layouts or views for differing handheld devices.  PO Resp. 75. Neither claim 10 nor claim 1, from which claim 10 depends, recites such a preview function.

### iv. Dependent Claims 4 and 5

Dependent claim 4 recites "wherein selections from the second menu are capable of being transmitted to a receiving computer via a wireless link." Dependent claim 5 recites "wherein selections from the second menu are capable of being transmitted to a receiving computer via the internet."  As Petitioner argues (Pet. 60–61), the Specification discloses that systems in which a user orders selected goods from an electronic mall or virtual store front via the internet are known.  *See* Ex. 1031, col. 12, ll. 45–65.  The additional elements recited by these claims are conventional and well-known and do not add significantly more to the abstract idea so as to make these claims patent-eligible.  *Mayo*, 132 S. Ct. at 1298.  Patent Owner makes no argument specifically directed to the additional elements recited by claims 4 and 5.  *See* PO Resp. 73–76.  Upon review of Petitioner's analysis and supporting evidence, we are persuaded by Petitioner that claims 4 and 5 do not recite additional elements that transform the claims into a patent-eligible application of an abstract idea.

### v. Dependent Claim 8

Dependent claim 8 recites "wherein the second menu is created in conformity with hypertext markup language or extensible markup language."  The Specification, itself, describes HTML and XML as known languages for creating documents for use on the Worldwide Web or display on computer screens.  Ex. 1031, col. 12, ll. 7–20.  These additional elements

CBM2014-00015
Patent 6,384,850 B1

do not add significantly more to the abstract idea other than well-understood, routine, conventional features.  Patent Owner again makes no argument directed specifically to the additional elements recited by claim 8.  *See* PO Resp. 73–76.  Upon review of Petitioner's analysis and supporting evidence, we are persuaded by Petitioner that claim 8 does not recite additional elements that transform the claim into a patent-eligible application of an abstract idea.

*vi. Dependent Claim 9*

Dependent claim 9 recites "wherein the second menu overwrites the first menu."  As discussed above with regard to claim 1, the Specification discloses that GUIs that display menus from which records can be created, deleted, *modified*, or arranged are conventional. Ex. 1031, col. 4, l. 59– col. 5, l. 32.  Thus, claim 9 does not recite any additional elements that add significantly more to the abstract ideas so as to make claim 9 patent-eligible. *Mayo*, 132 S. Ct. at 1298.  Upon review of Petitioner's analysis and supporting evidence and taking into account Patent Owner's arguments, discussed below, we are persuaded by Petitioner that claim 9 does not recite additional elements that transform the claim into a patent-eligible application of an abstract idea.

We are not persuaded by Patent Owner's argument that this claim recites additional elements that transform the abstract idea into a patent-eligible application (PO Resp. 74) because it is based upon an overly narrow construction of the claim.  Patent Owner argues that "this claimed function involves replacing the substantive contents of the first (back office) menu with the newly-generated second menu."  *Id.* at 74.  However, as discussed

27

CBM2014-00015
Patent 6,384,850 B1

in section II(B)(v) and as discussed with regard to claim 1 above, claim 9
does not require a back-office menu.

### vii. Dependent Claim 11

Dependent claim 11 recites "wherein the menu categories and items
comprising the second menu are subsets, respectively, of the menu
categories and items comprising the first menu." As discussed above with
regard to claim 1, the Specification discloses that GUIs that display menus
from which records can be created, *deleted*, modified, or arranged are
conventional. Ex. 1031, col. 4, l. 59–col. 5, l. 32. Thus, claim 11 does not
recite any additional elements that add significantly more to the abstract
ideas so as to make claim 11 patent-eligible. To add significantly more to
the abstract idea, additional features must be more than well-understood,
routine, conventional activity. *Mayo*, 132 S. Ct. at 1298. Upon review of
Petitioner's analysis and supporting evidence and taking into account Patent
Owner's arguments, discussed below, we are persuaded by Petitioner that
claim 11 does not recite additional elements that transform the claim into a
patent-eligible application of an abstract idea.

Patent Owner argues that claim 11 requires producing the subset by
excluding certain categories and items that do not meet certain parameters
and, this, "clearly demonstrate[s] that claim 11 is directed to a specific and
unconventional type of generation of menus." Pet. 75–76 (citing Ex. 1031,
col. 13, l. 64–col. 14, l. 7). Once again, Patent Owner's argument is
unpersuasive as it is based upon limitations not appearing in the claim.
Neither claim 11 nor claim 1, from which claim 11 depends, recites that the
subset is produced by excluding certain categories and items that do not
meet certain parameters.

CBM2014-00015
Patent 6,384,850 B1

## III. CONCLUSION

We conclude Petitioner has proven, by a preponderance of the evidence, that claims 1–11 of the '850 patent are unpatentable under 35 U.S.C. § 101.

This is a Final Written Decision of the Board under 35 U.S.C. § 328(a).  Parties to the proceeding seeking judicial review of this decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

## IV. ORDER

Accordingly, it is hereby:

ORDERED that claims 1–11 of U.S. Patent No. 6,384,850 B1 are held unpatentable.

CBM2014-00015
Patent 6,384,850 B1


FOR PETITIONER:

Richard Zembeck
Gilbert Greene
richard.zembeck@nortonrosefullbright.com
bert.greene@nortonrosefullbright.com


FOR PATENT OWNER:

John Osborne
Michael Fabiano
josborne@osborneipl.com
mdfabiano@fabianolawfirm.com