No. 15-1792, -1793

IN THE

# United States Court of Appeals for the Federal Circuit

———————————

AMERANTH, INC.,

Appellant,

v.

AGILYSYS, INC., EXPEDIA, INC., FANDANGO, LLC, HOTEL TONIGHT, INC., HOTWIRE, INC., HOTELS.COM, L.P., KAYAK SOFTWARE CORPORATION, LIVE NATION ENTERTAINMENT, INC., ORACLE CORPORATION, ORBITZ, LLC, OPENTABLE, INC., PAPA JOHN'S USA, INC., STUBHUB, INC., TICKETMASTER, LLC, TRAVELOCITY.COM LLP, WANDERSPOT LLC, DOMINO'S PIZZA, INC., DOMINO'S PIZZA, LLC, MOBO SYSTEMS, INC., EVENTBRITE, INC., BEST WESTERN INTERNATIONAL, INC., HYATT CORPORATION, MARRIOTT INTERNATIONAL, INC., STARWOOD HOTELS & RESORTS WORLDWIDE INC., USABLENET, INC., APPLE, INC., HILTON RESORTS CORP., HILTON WORLDWIDE, INC., HILTON INTERNATIONAL CO.,

Appellees.

———————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. CBM2014-00015 and CBM2014-00016.

———————————

## BRIEF FOR APPELLEES

———————————

October 30, 2015

*Parties and Counsel Listed on the Following Pages*

MARK D. FOWLER
JAMES M. HEINTZ
ERIN P. GIBSON
STANLEY J. PANIKOWSKI
ROBERT C. WILLIAMS
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
(650) 833-2048

Counsel for Appellees Eventbrite, Inc.
and Apple, Inc.

LOWELL D. MEAD
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

Counsel for Appellee Mobo
Systems, Inc.

J. RICK TACHE
GREENBERG TRAURIG LLP
3161 Michelson Dr., Suite 1000
Irvine, CA 92612
(949) 732-6500

Counsel for Appellee Best Western
International, Inc.

JONATHAN S. FRANKLIN
RICHARD S. ZEMBEK
GILBERT A. GREENE
STEPHANIE N. DeBROW
NORTON ROSE FULBRIGHT US LLP
799 9th Street, N.W.
Washington, D.C. 20001
(202) 662-0466

Counsel for Appellees Expedia, Inc.;
Fandango, LLC; Hotel Tonight, Inc.;
Hotwire, Inc.; Hotels.com, L.P.; Kayak
Software Corp.; Live Nation
Entertainment, Inc.; Orbitz, LLC;
OpenTable, Inc.; Papa John's USA, Inc.;
StubHub, Inc.; Ticketmaster, LLC; TVL
LP (formerly known as Travelocity.com
LP); and Wanderspot LLC

FRANK A. ANGILERI
THOMAS W. CUNNINGHAM
BROOKS KUSHMAN PC
1000 Town Center, 22nd Floor
Southfield, MI 48075
(248) 358-4400

Counsel for Appellees Domino's Pizza,
Inc. and Domino's Pizza, LLC

JARED BOBROW
BRIAN CHANG
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(605) 802-3034

Counsel for Appellee Oracle Corp.

LAURA BETH MILLER
DAVID P. LINDNER
BRINKS GILSON & LIONE
455 N. Cityfront Plaza Dr., Suite 3600
Chicago, IL 60611
(312) 321-4715

Counsel for Appellee Hyatt Corporation

ANDREW P. ZAPPIA
LECLAIRRYAN
70 Linden Oaks, Suite 210
Rochester, NY 14604
(585) 270-2100

Counsel for Appellee Usablenet, Inc.

DAVID M. STEIN
ALSTON & BIRD LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
(213) 576-1000

Counsel for Appellees Hilton Resorts
Corp., Hilton Worldwide, Inc. and Hilton
International Co.

ANTHONY NIMMO
ICE MILLER LLP
200 West Madison, Suite 3500
Chicago, IL 60606
(312) 726-8149

Counsel for Appellee Agilysys, Inc.

JOHN GUARAGNA
JAMES M. HEINTZ
STANLEY J. PANIKOWSKI
ROBERT C. WILLIAMS
DLA PIPER LLP (US)
401 Congress Ave.
Austin, TX 78701
(512) 457-7125

Counsel for Appellee Starwood Hotels
& Resorts Worldwide, Inc.

NICK G. SAROS
MICHAEL GLENN BABBITT
JENNER & BLOCK LLP
633 W. 5th St., Suite 3600
Los Angeles, CA 90071
(213) 239-5175

Counsel for Appellee Marriott
International, Inc.

# CERTIFICATE OF INTEREST

Counsel for appellee, Agilysys, Inc., certifies the following:

1.      The full name of every party or amicus represented by me is:

    Agilysys, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    N/A

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    N/A

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

    Ice Miller LLP:  Anthony Nimmo

Dated:  October 30, 2015            /s/ Anthony Nimmo
                                       Anthony Nimmo
                                       ICE MILLER LLP
                                       200 West Madison, Suite 3500
                                       Chicago, IL  60606
                                       (312) 726-8149

                                       Counsel for Appellee Agilysys, Inc.

## CERTIFICATE OF INTEREST

Counsel for appellees, Expedia, Inc.; Fandango, LLC; Hotel Tonight Inc.; Hotwire, Inc.; Hotels.com, L.P.; Kayak Software Corp.; Live Nation Entertainment, Inc.; Orbitz, LLC; OpenTable, Inc.; Papa John's USA, Inc.; StubHub, Inc.; Ticketmaster, LLC; TVL LP (formerly known as Travelocity.com LP); and Wanderspot LLC, certifies the following:

1.     The full name of every party or amicus represented by me is:

Expedia, Inc.; Fandango, LLC; Hotel Tonight, Inc.; Hotwire, Inc.; Hotels.com, L.P.; Kayak Software Corp.; Live Nation Entertainment, Inc.; Orbitz, LLC; OpenTable, Inc.; Papa John's USA, Inc.; StubHub, Inc.; Ticketmaster, LLC; TVL LP (formerly known as Travelocity.com LP); and Wanderspot LLC

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Expedia, Inc., a Washington corporation, is wholly owned by Expedia, Inc., a publicly-held Delaware corporation with no parent corporation. Liberty Interactive Corporation owns 10% or more of Expedia, Inc.'s (Delaware) stock.

Fandango, LLC is wholly owned (through intermediate entities) by Comcast Corporation, which is a publicly-held company. No other parent corporation or publicly-held company owns 10% or more of Fandango's stock.

Hotel Tonight Inc. has no parent corporation. No parent corporation or publicly-held company owns 10% or more of Hotel Tonight Inc.'s stock.

Hotwire, Inc. is wholly owned by Expedia, Inc., which is a publicly-held Delaware corporation with no parent corporation. Liberty Interactive Corporation owns 10% or more of Expedia, Inc.'s (Delaware) stock.

Hotels.com, L.P. is wholly owned (through intermediate entities) by Expedia, Inc., which is a publicly-held Delaware corporation with no parent corporation. Liberty Interactive Corporation owns 10% or more of Expedia, Inc.'s (Delaware) stock.

## CERTIFICATE OF INTEREST (CONTINUED)

Kayak Software Corp. is wholly owned by The Priceline Group, Inc., which is a publicly-held corporation that has no parent corporation.  No other parent corporation or publicly-held company owns 10% or more of Kayak Software Corp.'s stock.

Live Nation Entertainment, Inc. has no parent corporation.  According to the public records, Liberty Media Corporation, a publicly-held corporation, owns more than 10% of the outstanding stock in Live Nation Entertainment, Inc.  No other parent corporation or publicly-held company owns 10% or more of Live Nation Entertainment's stock.

Orbitz, LLC is 99% held by Orbitz, Inc. and 1% held by O Holdings, Inc., which is wholly owned by Orbitz, Inc.  Orbitz, Inc. is wholly owned by Orbitz Worldwide, LLC.  Orbitz Worldwide, LLC is wholly owned by Orbitz Worldwide, Inc.  Orbitz Worldwide, Inc. is wholly owned by Expedia, Inc., a Washington corporation, which is wholly owned by Expedia, Inc., a publicly-held Delaware corporation.  Liberty Interactive Corporation owns 10% or more of Expedia, Inc.'s (Delaware) stock.

OpenTable, Inc. is wholly owned by The Priceline Group Inc., which is a publicly held corporation that has no parent corporation. No other parent corporation or publicly-held company owns 10% or more of OpenTable's stock.

Papa John's USA, Inc. is wholly owned by Papa John's International, Inc., which is a publicly-held corporation.  No other parent corporation or publicly-held company owns 10% or more of Papa John's USA, Inc.'s stock.

StubHub, Inc. is wholly owned by eBay, Inc., which is a publicly-held corporation.  No other parent corporation or publicly-held company owns 10% or more of StubHub, Inc.'s stock.

Ticketmaster, LLC is wholly owned by Live Nation Entertainment, Inc.  According to the public records, Liberty Media Corporation, a publicly-held corporation, owns more than 10% of the outstanding stock in Live Nation Entertainment, Inc.  No other parent corporation or publicly-held company owns 10% or more of Ticketmaster, LLC's stock.

**CERTIFICATE OF INTEREST (CONTINUED)**

TVL LP (formerly known as Travelocity.com LP) is 99% held by TVL LLC (10% as TVL LP's general partner and 89% as its limited partner) and 1% held by TVL Holdings I, LLC (as TVL LP's limited partner). TVL Holdings I, LLC is wholly owned by TVL LLC.  TVL LLC is wholly owned by TVL Holdings, Inc., which in turn is wholly owned by Sabre GLBL Inc.  Sabre GLBL Inc. is wholly owned by Sabre Holdings Corporation, which in turn is wholly owned by Sabre Corporation.  Sabre Corporation is 30% owned by TPG Partners V, LP, 20% owned by Silver Lake Partners II, LP, 17% owned by Sovereign Co-Invest LLC, and 31% publicly-held.  No other parent corporation or publicly-held company owns 10% or more of TVL LP's stock.

Wanderspot LLC is a wholly owned indirect subsidiary of IAC/InterActiveCorp, which is a publicly-held corporation.  No other parent corporation or publicly-held company owns 10% or more of Wanderspot LLC's stock.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Norton Rose Fulbright US LLP: Jonathan Franklin, Richard Zembek, Gilbert Greene, and Stephanie DeBrow

Dated:  October 30, 2015                    /s/ Jonathan S. Franklin
                                            Jonathan S. Franklin
                                            NORTON ROSE FULBRIGHT US LLP
                                            799 9th Street, N.W.
                                            Washington, D.C.  20001
                                            (202) 662-0466

                                            Counsel for Appellees Expedia, Inc.; Fandango, LLC; Hotel Tonight Inc.; Hotwire, Inc.; Hotels.com, L.P.; Kayak Software Corp.; Live Nation Entertainment, Inc.; Orbitz, LLC; OpenTable, Inc.; Papa John's USA, Inc.; StubHub, Inc.; Ticketmaster, LLC; TVL LP (formerly known as Travelocity.com LP); and Wanderspot LLC

## CERTIFICATE OF INTEREST

Counsel for appellee, Oracle Corp., certifies the following:

1.      The full name of every party or amicus represented by me is:

   Oracle Corp.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   N/A

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   N/A

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   Norton Rose Fulbright US LLP: Richard S. Zembek and Gilbert A. Greene

   Weil Gotshal & Manges:  Jared Bobrow and Brian Chang

Dated:  October 30, 2015          /s/ Jared Bobrow
                                  Jared Bobrow
                                  WEIL, GOTSHAL & MANGES LLP
                                  201 Redwood Shores Parkway
                                  Redwood Shores, CA  94065
                                  (605) 802-3034

                                  Counsel for Appellee Oracle Corp.

## CERTIFICATE OF INTEREST

Counsel for appellees, Domino's Pizza, Inc. and Domino's Pizza, LLC, certifies the following:

1.      The full name of every party or amicus represented by me is:

      Domino's Pizza, Inc. and Domino's Pizza, LLC

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

      N/A

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

      Domino's Pizza, LLC is a wholly owned subsidiary of Domino's Inc., which is a wholly-owned subsidiary of Domino's Pizza, Inc. Domino's Pizza, Inc. is a publicly held corporation.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

      Brooks Kushman P.C.:  Frank A. Angileri, Thomas W. Cunningham, and Mark A. Jotanovic

Dated:  October 30, 2015        /s/ Frank A. Angileri
                                  Frank A. Angileri
                                  Thomas W. Cunningham
                                  BROOKS KUSHMAN PC
                                  1000 Town Center, 22nd Floor
                                  Southfield, MI  48075
                                  (248) 358-4400

                                  Counsel for Appellees Domino's Pizza, Inc. and Domino's Pizza, LLC

# CERTIFICATE OF INTEREST

Counsel for appellee, Mobo Systems, Inc., certifies the following:

1.    The full name of every party or amicus represented by me is:

Mobo Systems, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

The requested information is included in the Confidential Certificate of Interest previously filed by counsel for Mobo Systems, Inc. *See* Doc. No. 53.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Cooley LLP:  Lowell D. Mead

Dated:  October 30, 2015          /s/ Lowell D. Mead
                                 Lowell D. Mead
                                 COOLEY LLP
                                 3175 Hanover Street
                                 Palo Alto, CA  94304
                                 (650) 843-5000

                                 Counsel for Appellee Mobo Systems, Inc.

# CERTIFICATE OF INTEREST

Counsel for appellees, Apple Inc., Starwood Hotels & Resorts Worldwide, Inc., and Eventbrite, Inc., certifies the following:

1.    The full name of every party or amicus represented by me is:

       Apple Inc., Starwood Hotels & Resorts Worldwide, Inc., and Eventbrite, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

       N/A

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

       N/A

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

       DLA Piper LLP (US):  Mark Fowler, James Heintz, Erin P. Gibson, Robert C. Williams, and Stanley J. Panikowski for Apple, Inc. and Eventbrite, Inc.

       DLA Piper LLP (US):  John Guaragna, James Heintz, Jesse Hindman, Robert C. Williams, and Stanley J. Panikowski for Starwood Hotels & Resorts Worldwide, Inc.

Dated:  October 30, 2015          /s/ Stanley J. Panikowski
                                  Stanley J. Panikowski
                                  DLA PIPER LLP (US)
                                  401 B Street, Suite 1700
                                  San Diego, CA  92101
                                  (619) 699-2700

                                  Counsel for Appellees Apple, Inc., Starwood Hotels & Resorts Worldwide, Inc., and Eventbrite, Inc.

## CERTIFICATE OF INTEREST

Counsel for appellee, Best Western International, Inc., certifies the following:

1.    The full name of every party or amicus represented by me is:

   Best Western International, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   N/A

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   Best Western International, Inc. is a private non-profit association and no publicly-held company owns more than 10% of Best Western International Inc.'s stock.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   Greenberg Traurig, LLP: J. Rick Taché

Dated:  October 30, 2015          /s/ J. Rick Taché
                                  J. Rick Taché
                                  GREENBERG TRAURIG LLP
                                  3161 Michelson Dr., Suite 1000
                                  Irvine, CA  92612
                                  (949) 732-6500

                                  Counsel for Appellee Best Western
                                  International, Inc.

# CERTIFICATE OF INTEREST

Counsel for appellee, Hyatt Corporation, certifies the following:

1.     The full name of every party or amicus represented by me is:

Hyatt Corporation

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Hyatt Hotels Corporation

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Brinks Gilson & Lione:  Laura Beth Miller, David P. Lindner, Ian M. Moodie, James M. Oehler, James G. DeRouin (formerly of Brinks Gilson & Lione), and Joseph S. Hanasz (formerly of Brinks Gilson & Lione)

Gilliam & Smith LLP:  Harry L. Gilliam, Jr.

Dated:  October 30, 2015          /s/ David P. Lindner
                                  David P. Lindner
                                  BRINKS GILSON & LIONE
                                  455 N. Cityfront Plaza Dr., Suite 3600
                                  Chicago, IL  60611
                                  (312) 321-4715

                                  Counsel for Appellee Hyatt Corporation

# CERTIFICATE OF INTEREST

Counsel for appellee, Marriott International, Inc., certifies the following:

1.      The full name of every party or amicus represented by me is:

   Marriott International, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   N/A

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   No publicly-held company at this time owns 10% or more of the stock of Marriott International, Inc.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   Jenner & Block LLP:  Nick G. Saros, Bradford P. Lyerla, Reginald J. Hill, and Michael G. Babbitt


Dated:  October 30, 2015          /s/ Nick G. Saros
                                  Nick G. Saros
                                  JENNER & BLOCK LLP
                                  633 W. 5th St., Suite 3600
                                  Los Angeles, CA  90071
                                  (213) 239-5175

                                  Counsel for Appellee Marriott International, Inc.

# CERTIFICATE OF INTEREST

Counsel for appellee, Usablenet, Inc., certifies the following:

1.    The full name of every party or amicus represented by me is:

   Usablenet, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   N/A

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   N/A

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   LeClairRyan:  Andrew P. Zappia


Dated:  October 30, 2015            /s/ Andrew P. Zappia
                                    Andrew P. Zappia
                                    LECLAIRRYAN
                                    70 Linden Oaks, Suite 210
                                    Rochester, NY  14604
                                    (585) 270-2100

                                    Counsel for Appellee Usablenet, Inc.

# CERTIFICATE OF INTEREST

Counsel for appellees Hilton Resorts Corp., Hilton Worldwide, Inc., and Hilton International Co. certifies the following:

1.    The full name of every party or amicus represented by me is:

    Hilton Resorts, Corp., Hilton Worldwide, Inc., Hilton International Co.

2.    The real name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    N/A

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    Hilton Resorts, Corp., and Hilton International Co. are indirect wholly-owned subsidiaries of Hilton Worldwide, Inc. which is a wholly-owned subsidiary of Hilton Worldwide Holdings, Inc. Affiliates of the Blackstone Group L.P. hold 10% or more of the Hilton Worldwide Holdings Inc. common stock.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

    Akin Gump Straus Hauer & Feld LLP, Alston & Bird LLP, David Stein


Dated: October 30, 2015                    Respectfully submitted,

                                           /s/ David M Stein
                                           David M. Stein
                                           ALSTON & BIRD , LLP
                                           333 S. Hope Street, 16th Floor
                                           Los Angeles, CA 90071
                                           Telephone: (213) 576-1000

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

STATEMENT OF RELATED CASES ...................................................... vi

INTRODUCTION ....................................................................................1

JURISDICTIONAL STATEMENT .........................................................2

STATEMENT OF THE ISSUE .................................................................2

STATEMENT OF FACTS .........................................................................3

      A.     The '850 and '325 Patents. .......................................3

      B.     The Claims. ...............................................................8

      C.     The Board's Decisions. ...........................................11

SUMMARY OF ARGUMENT .................................................................12

STANDARDS OF REVIEW ....................................................................15

ARGUMENT ..........................................................................................16

    I.     THE BOARD CORRECTLY FOUND THAT THE '850
         AND '325 PATENTS ARE NOT DIRECTED TO A
         TECHNOLOGICAL INVENTION. ...................................16

      A.     The Technological Invention Inquiry Does Not Involve
            a Novelty or Non-Obviousness Determination Under
            Sections 102 and 103. ..............................................17

      B.     The '850 and '325 Patents Are Not Directed to a
            Technological Invention. ..........................................22

            1.     Synchronization. ..........................................23

            2.     Display of Menus on Non-PC Standard Devices. .........25

            3.     Generation of Hierarchical Menus. ...............................26

    II.    THE BOARD CORRECTLY DETERMINED THAT
         CLAIMS 1-11 OF THE '850 PATENT AND CLAIMS 1-10
         OF THE '325 PATENT ARE PATENT-INELIGIBLE
         UNDER 35 U.S.C. § 101. ..............................................30

      A.     The Claims Are Directed to a Patent-Ineligible Abstract
            Idea. .........................................................................32

B.    The "Additional Elements" Identified by Ameranth Are Insufficient to Impart Patent Eligibility. ...................................37

    1.    Synchronous Communication Is Not an "Additional Element" Sufficient to Impart Patent Eligibility. ....................................................................37

    2.    The Display and Generation of Hierarchical Menus Is a Conventional Computer Function That Is Insufficient to Impart Patent Eligibility. ...........40

    3.    The Recited Central Processing Unit Is a Generic Computer Component That Is Insufficient to Impart Patent Eligibility. ................................................43

    4.    Display of Menus on Non-PC Standard Devices Is Not an "Additional Element" Sufficient to Impart Patent Eligibility. ................................................45

    5.    The Use of a Well-Known, Predetermined Type of Ordering Is Not Sufficient to Impart Patent Eligibility. ....................................................................46

CONCLUSION .......................................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).....................*passim*

*In re Baxter*, 678 F.3d 1357 (Fed. Cir. 2012) ..........................................................39

*Bilski v. Kappos*, 561 U.S. 593 (2010).......................................................1, 30, 31, 32

*buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) .......................32, 47

*Content Extraction & Transmission, LLC v. Wells Fargo Bank, Nat'l Assoc.*, 776 F.3d 1343 (Fed. Cir. 2014) ..................................................33, 35, 48

*In re Cuozzo Speed Technologies, LLC*, 793 F.3d 1268 (Fed. Cir. 2015) ......................................................................................................................43

*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) ......................................................................................................33, 35, 48

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) .....................................................................................................................41, 42

*In re Ferguson*, 558 F.3d 1359 (Fed. Cir. 2009) ....................................................16

*In re Hiniker Co.*, 150 F.3d 1362 (Fed. Cir. 1998)..................................................16

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367 (Fed. Cir. 1986) ....................................................................................................................21

*IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422 (Fed. Cir. 2000)............24

*Intellectual Ventures I LLC v. Capital One Bank*, 792 F.3d 1363 (Fed. Cir. 2015) .................................................................................................35, 48

*Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) .................................................................................................35, 41, 48

*Kropa v. Robie*, 187 F.2d 150 (CCPA 1951)..........................................................24

*Mayo Collaborative Services v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012) .........................................................................30, 31, 46

*Muniauction Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008) ....................22

*Parker v. Flook*, 437 U.S. 584 (1978) ...................................................31

*Pitney Bowes Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298 (Fed. Cir. 1999) ...........................................................................24

*Power Integrations, Inc. v. Lee*, 797 F.3d 1318 (Fed. Cir. 2015)...........................38

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) ...............16, 33, 35

*Versata Dev. Grp. v. SAP Am., Inc.*, 793 F.3d 1306 (Fed. Cir. 2015).............*passim*

**Statutes:**

28 U.S.C. § 1295(a)(4)(A) .................................................................2

35 U.S.C. § 101 ..................................................................*passim*

35 U.S.C. § 102 ...........................................................13, 18, 20

35 U.S.C. § 103 ...........................................................13, 18, 20

35 U.S.C. § 141(c) .............................................................2

35 U.S.C. § 328 ..................................................................2

35 U.S.C. § 329 ..................................................................2

Leahy Smith America Invents Act, Pub. L. 112-29, § 18, 125 Stat. 284 (2011) ................................................................*passim*

**Regulatory Materials:**

37 C.F.R. § 42.300(b) .........................................................43

37 C.F.R. § 42.301(b) .....................................................11, 18

77 Fed. Reg. 48734 (Aug. 14, 2012).....................................17, 21

77 Fed. Reg. 48756 (Aug. 14, 2012).............................19, 20, 22, 29

Manual of Patent Examining Procedure § 2164.05(a)............................................21

## STATEMENT OF RELATED CASES

*Apple, Inc. et al. v. Ameranth Inc.*, Nos. 15-1703 and 15-1704, are appeals from the decision of the Patent Trial and Appeal Board of the U.S. Patent and Trademark Office involving a related patent owned by Ameranth.  Those appeals have been set as companion cases with this case.

In addition, counsel for Appellees are aware of the following district court cases that involve the patents that are at issue in this appeal: *Ameranth, Inc. v. Pizza Hut, Inc. et. al.,* No. 3:11-cv-01810 (S.D. Cal., filed Aug. 15, 2011); *Ameranth, Inc. v. Agilysys, Inc.*, No. 3:12-cv-00858 (S.D. Cal., filed Apr. 6, 2012); *Ameranth, Inc. v. Expedia, Inc.*, No. 3:12-cv-01654 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. Fandango, Inc.*, No. 3:12-cv-01651 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. Hotel Tonight, Inc.*, No. 3:12-cv-01633 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. Hotels.com, LP*, No. 3:12-cv-01634 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. Hotwire, Inc.*, No. 3:12-cv-01653 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. Kayak Software Corporation*, No. 3:12-cv-01640 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. Ticketmaster, LLC et. al.*, No. 3:12-cv-01648 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. Oracle Corporation*, No. 3:12-cv-01655 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. Orbitz, LLC*, No. 3:12-cv-01644 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. OpenTable, Inc.*, No. 3:13-cv-01840 (S.D. Cal., filed

Aug. 8, 2013); *Ameranth, Inc. v. Papa John's USA, Inc.*, No. 3:12-cv-00729 (S.D. Cal., filed Mar. 27, 2012); *Ameranth, Inc. v. Stubhub, Inc.*, No. 3:12-cv-01646 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. Travelocity.com, LP*, No. 3:12-cv-01649 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. Wanderspot LLC*, No. 3:12-cv-01652 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. Pizza Hut, Inc. et al.*, No. 3:12-cv-00742 (S.D. Cal., filed Mar. 27, 2012); *Ameranth, Inc. v. Domino's Pizza, LLC et al.*, No. 3:12-cv-00733 (S.D. Cal., filed Mar. 27, 2012); *Ameranth, Inc. v. GrubHub, Inc.*, No. 3:12-cv-00739 (S.D. Cal., filed Mar. 27, 2012); *Ameranth, Inc. v. NAAMA Networks, Inc. et al.*, No. 3:12-cv-01643 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. Mobo Systems, Inc.*, No. 3:12-cv-01642 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. Starbucks Corporation*, No. 3:12-cv-01642 (S.D. Cal., filed May 6, 2013); *Ameranth, Inc. v. Eventbrite, Inc.*, No. 3:13-cv-00350 (S.D. Cal., filed Feb. 13, 2013); *Ameranth, Inc. v. Best Western International*, Inc., No. 3:12-cv-01630 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. Hilton Resorts Corporation et al.*, No. 3:12-cv-01636 (S.D. Cal., filed July 2, 2012); *Ameranth, Inc. v. Hyatt Hotels Corporation et al.*, No. 3:12-cv-01627 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. Marriott International, Inc. et al.*, No. 3:12-cv-01631 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. Starwood Hotels and Resorts Worldwide, Inc.*, No. 3:12-cv-01629 (S.D. Cal., filed June 29, 2012); *Ameranth, Inc. v. Usablenet, Inc.*, No. 3:12-cv-01650 (S.D. Cal.,

filed June 29, 2012); *Ameranth, Inc. v. Apple, Inc.*, No. 3:12-cv-02350 (S.D. Cal.,

filed Sept. 26, 2012).

# INTRODUCTION

The Patent Trial and Appeal Board ("Board") of the U.S. Patent and Trademark Office ("PTO") correctly concluded that Appellant Ameranth, Inc. ("Ameranth") was not entitled to patent the basic concept of generating and transmitting menus using a wholly generic computer system and routine, conventional functionality, and therefore claims 1-11 of U.S. Patent No. 6,384,850 (the "'850 patent") and claims 1-10 of U.S. Patent No. 6,871,325 (the "'325 patent") are unpatentable under 35 U.S.C. § 101. Despite Ameranth's attempt to confuse the issues, it identifies no error in that decision. To the contrary, the Board's conclusion fully comports with the Supreme Court's holdings in *Bilski v. Kappos*, 561 U.S. 593 (2010), *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), and their progeny. Similar to the patents in those cases, Ameranth's patents improperly attempt to claim an abstract idea implemented through wholly generic computer technology.

Ameranth cannot avoid this inescapable conclusion by arguing that the Board should never have instituted review in the first place because its patents purportedly recite a "technological invention." The argument is without merit because Ameranth's patents claim no inventive technology. The Board correctly concluded that the patents merely recite "known technologies." A1030; A1058. Accordingly, the Court should affirm the Board's findings that claims 1-11 of the

'850 patent and claims 1-10 of the '325 patent are patent-ineligible under 35 U.S.C. § 101.

## JURISDICTIONAL STATEMENT

This action arises from Covered Business Method ("CBM") Review proceedings, Nos. CBM2014-00015 and CBM2014-00016, before the Board. The Board had jurisdiction over the CBM Review proceedings pursuant to Section 18 of the Leahy Smith America Invents Act ("AIA"), Pub. L. 112-29, 125 Stat. 284 (2011).

This appeal is taken from the Final Written Decisions issued by the Board on March 20, 2015, pursuant to § 18(a)(1) of the AIA and 35 U.S.C. § 328. This Court has jurisdiction over the appeal pursuant to 35 U.S.C. § 329, 35 U.S.C. § 141(c), and 28 U.S.C. § 1295(a)(4)(A).

## STATEMENT OF THE ISSUES

1.    Whether the Board correctly found that the '850 and '325 patents are not directed to a technological invention.

2.    Whether the Board correctly found that claims 1-11 of the '850 patent and claims 1-10 of the '325 patent are patent-ineligible under 35 U.S.C. § 101.

## STATEMENT OF FACTS

### A.    The '850 and '325 Patents.

The '850 patent issued on May 7, 2002, from an application filed on September 21, 1999.  A68.  The '325 patent is a continuation of the '850 patent, and therefore includes substantially the same specification and identical figures. *Compare* A68-82 *with* A83-99.  The patents describe a computer system and method for generating restaurant menus and transmitting them to another location. Specifically, the patents describe generating a second menu from a first menu, and transmitting the second menu to another location, such as a handheld device or Web page.  *See*, *e.g.*, A76 at 3:35-39; A91 at 3:40-44.  The patents state that "[w]hile computers have dramatically altered many aspects of modern life, pen and paper have prevailed in the hospitality industry, e.g., for restaurant ordering, reservations and wait-list management, because of their simplicity, ease of training and operational speed."  A75 at 1:20-24; A90 at 1:25-29.  Accordingly, "a principal object" of the purported invention was to provide a system that "facilitates user-friendly and efficient generation of computerized menus for restaurants."  A75 at 2:49-53; A90 at 2:54-58.

Figure 1 illustrates an exemplary graphical user interface ("GUI") that can be used to build a second menu from a first menu.  A69; A77 at 6:11-14; A84; A92 6:20-24.

3



FIG.1

A69; A84.

The GUI depicted in Figure 1 includes a hierarchical tree structure 2 on the left, and a modifier window 5 and sub-modifier window 6 on the right. A77 at 6:14-21; A92 at 6:24-31. The hierarchical tree structure 2 displays a first menu including a list of menu categories (*e.g.*, Entrees, Desserts, etc.), menu items (*e.g.*, Lamb, NY Strip, etc.), menu modifiers (*e.g.* Vegetables, Meat Temperature, etc.), and sub-modifiers (*e.g.*, Med. Rare, Med Well, etc.). A69; A77 at 6:14-21; A84; A92 at 6:24-31; *see also* A77-78 at 6:66-7:3; A93 at 7:12-16. Menu modifiers that correspond to the selected menu category (*e.g.*, Entrees) are shown in modifier window 5 and sub-modifiers that correspond to the selected modifier (*e.g.*,

Quantity) are shown in sub-modifier window 6.  A69; A77 at 6:14-21, 6:29-34; A84; A92 at 6:24-31, 6:41-46.

The patents describe using the GUI illustrated in Figure 1 to build a second menu by selecting from the hierarchical tree structure 2 of the first menu, a subset of the menu categories, menu items, modifiers, and sub-modifiers.  A77 at 6:13-48; A92 at 6:22-61.  The second menu then may be transmitted by "download[ing]" it to another location, such as a handheld device or Web page.  A76 at 3:35-39 ("[T]he menu can be downloaded to either a handheld device or Web page"); A91 at 3:40-44 (same).  For example, the second menu is transmitted to a handheld device by "downloading the menu . . . onto the POS interface on the handheld device."  A77 at 6:22-25; A92 at 6:33-36; *see also* A78 at 7:4-12, 8:51-56; A93 at 7:17-25; A93-94 at 8:65-9:3.

Figure 7 illustrates an exemplary second menu configured for display on a handheld device or Web page. A74; A79 at 10:14-16, 10:23-26; A89; A94 at 10:27-29, 10:36-39.  In this embodiment, the second menu is displayed in a simple "catalogue-like point-and-click format" that a restaurant server can page through to take an order.  A79 at 10:16-22; A94 at 10:29-35.



FIG.7

A74; A89.

The patents explain that the purported invention is implemented using wholly generic computer systems, including typical hardware and software components. For example, the patents state:

> The preferred embodiment of the present invention uses ***typical hardware elements in the form of a computer workstation, operating system and application software elements*** which configure the hardware elements for operation in accordance with the present invention. ***A typical workstation platform includes hardware such as a central processing unit ("CPU"), e.g., a Pentium® microprocessor***, RAM, ROM, ***hard drive storage*** in which are stored various system and application programs and data used within the workstation, modem, ***display screen, keyboard, mouse*** and optional removable storage devices such as floppy drive or a CD ROM drive. The workstation hardware is configured by software including ***an operating system, e.g., Windows® 95, 98, NT or CE***, networking

software (including internet browsing software) and ***application software components***.

A77 at 5:34-47 (emphases added); A92 at 5:39-53 (emphases added).

The patents further explain that the purported invention is implemented using conventional and well-known software techniques.  The patents state that "[t]he software applications for performing the functions falling within the [scope of the claims] can be written in any commonly used computer language," and "[t]he discrete programming steps are commonly known;" thus "programming details are not necessary to a full description of the invention."  A80 at 11:43-48; A95 at 11:56-61.  The patents also state that the invention can take advantage of "common GUI operating systems," such as Microsoft Windows® for personal computers and Windows® CE for wireless handheld devices.  A77 at 5:6-10; A92 at 5:11-15.

Although the alleged invention is described entirely in the context of restaurant menus, the patents purport to apply the concept more broadly, stating that the alleged invention "encompasses the generation of a menu in any context known to those of skill in the art where an objective is to facilitate display of the menu so as to enable selection of items from that menu."  A81 at 14:18-21; A96 at 14:30-33.  Ameranth has attempted to apply the alleged invention broadly by bringing infringement claims against myriad companies in varied industry sectors far afield from and unrelated to restaurant menus, including handheld device

manufacturer Apple, movie ticket provider Fandango, numerous hotel companies, and the many other Appellees in this case. *See supra* at vi-viii.

## B.    The Claims.

The claims at issue in this appeal—claims 1-11 of the '850 patent and claims 1-10 of the '325 patent—are directed to systems for generating and transmitting menus.  Of these claims, claim 1 of the '850 patent and claims 1, 7, 8, and 9 of the '325 patent are independent.  Claim 1 of the '850 patent and claim 1 of the '325 patent, which are reproduced below, are illustrative of the independent claims.

### Illustrative Independent Claim for the '850 Patent

1. An information management and synchronous communications system for generating and transmitting menus comprising:

    a. a central processing unit,

    b. a data storage device connected to said central processing unit,

    c. an operating system including a graphical user interface,

    d. a first menu consisting of menu categories, said menu categories consisting of menu items, said first menu stored on said data storage device and displayable in a window of said graphical user interface in a hierarchical tree format,

    e. a modifier menu stored on said data storage device and displayable in a window of said graphical user interface,

    f. a sub-modifier menu stored on said data storage device and displayable in a window of said graphical user interface, and

g. application software for generating a second menu from said first menu and transmitting said second menu to a wireless handheld computing device or Web page,

wherein the application software facilitates the generation of the second menu by allowing selection of categories and items from the first menu, addition of menu categories to the second menu, addition of menu items to the second menu and assignment of parameters to items in the second menu using the graphical user interface of said operating system, said parameters being selected from the modifier and sub-modifier menus.

A81-82 at 14:48-15:11.

**Illustrative Independent Claim for the '325 Patent**

1. An information management and synchronous communications system for generating and transmitting menus comprising:

a. a central processing unit,

b. a data storage device connected to said central processing unit,

c. an operating system including a graphical user interface,

d. a first menu consisting of menu categories, said menu categories consisting of menu items, said first menu stored on said data storage device and displayable in a window of said graphical user interface in a hierarchical tree format,

e. a modifier menu stored on said data storage device and displayable in a window of said graphical user interface,

f. a sub-modifier menu stored on said data storage device and displayable in a window of said graphical user interface, and

g. application software for generating a second menu from said first menu and transmitting said second menu to a wireless handheld computing device or Web page,

wherein the application software facilitates the generation of the
second menu by allowing selection of categories and items from the
first menu, addition of menu categories to the second menu, addition
of menu items to the second menu and assignment of parameters to
items in the second menu using the graphical user interface of said
operating system, said parameters being selected from the modifier
and sub-modifier menus, wherein said second menu to applicable to a
predetermined type of ordering.

A96-97 at 14:60-15:24.

**Dependent Claims**

Dependent claims 2-11 of the '850 patent depend from claim 1 and recite the

further limitations that:

(a) the second menu is "a restaurant menu" (claim 2);

(b) the second menu is displayable on "a wireless computing device" (claim
3) or "computers in a network" (claim 6);

(c) the first and second menu are displayable "in the same window" (claim
10);

(d) selections from the second menu are transmitted via "wireless link"
(claim 4) or "the internet" (claim 5);

(e) the computer network is "the internet" (claim 7);

(f) the second menu is "created in conformity with hypertext markup
language or extensible markup language" (claim 8);

(g) the "second menu overwrites the first menu" (claim 9); and

(h) the "menu categories and items" of the second menu are "subsets" of
"menu categories and items" of the first menu (claim 11).  A82 at 15:12-49.

Dependent claims 2-6 of the '325 patent depend from claim 1 and recite

further limitations defining the type of ordering to which the second menu is

10

applicable, including "table-based customer ordering" (claim 2); "drive-through customer ordering" (claim 3); "ordering via internet" (claim 4); "ordering via telephone" (claim 5); and "ordering via wireless device" (claim 6).  A97 at 15:25-34.

Dependent claim 10 of the '325 patent depends from claim 9 and recites that the "specified parameters" that are taken into account during generation of the second menu include "recipe content."  A98 at 17:1-3.

## C.    The Board's Decisions.

In its Institution Decisions, the Board found that the '850 and '325 patents are covered business method patents because, among other reasons, the claims do not recite "a technological invention" within the meaning of Section 18(d)(1) of the AIA.  A1028-31; A1056-59.  The Board explained that a "technological invention" is one in which "the claimed subject matter as a whole recites a technological feature that is novel and unobvious over the prior art; and solves a technical problem using a technical solution."  A1028 (quoting 37 C.F.R. § 42.301(b)); A1056 (same).  The Board concluded that the alleged "technological features" identified by Ameranth are insufficient to exclude the patents from CBM review.  A1029-31; A1057-59.  The Board explained that those features are either (a) merely the "recitation of known technologies," or (b) not present in the claims. A1030-31; A1058-59.  Thus, the Board determined that the '850 and '325 patents

do not recite a technological invention and instituted CBM reviews. A1031; A1059.

In its Final Written Decisions, the Board held that claims 1-11 of the '850 patent and claims 1-10 of the '325 patent are patent-ineligible under 35 U.S.C. § 101. A29; A65. The Board concluded that the claims at issue are directed to the abstract idea of "generating a second menu from a first menu and sending the second menu to another location." A19; *see also* A59. The Board further concluded that the purported "additional elements" identified by Ameranth did not provide an "inventive concept" sufficient to transform the claims into a patent-eligible application of the abstract idea. A19-28; A59-65. In this regard, the Board found Ameranth's arguments regarding the purported "additional elements" unpersuasive because they are based on (a) an "overly narrow construction" of the claims, or (b) "elements not recited or required by the claim[s]." A22-23; A63-65; *see also* A25; A27; A28. This appeal followed.

## SUMMARY OF ARGUMENT

Despite Ameranth's numerous attempts to confuse the issues, it has not identified any error in either the Board's Institution Decisions or its Final Written Decisions. In its Institution Decisions, the Board correctly concluded that the '850 and '325 patents do not recite "a technological invention" and thus are subject to review under Section 18 of the AIA. Contrary to Ameranth's assertions, the

threshold inquiry as to whether a patent qualifies as a "technological invention" under Section 18(d)(1) of the AIA does not require a full-blown novelty or non-obviousness determination under 35 U.S.C. §§ 102 or 103. The "technological invention" inquiry asks only whether there is any claim of the patent that, on its face, fails to recite a non-conventional technological feature. Whether a patent claim might fail to satisfy the requirements of Section 102 or 103 is immaterial to this inquiry. Instead, the novelty and non-obviousness component of the technological invention inquiry is akin to the search for an inventive concept under 35 U.S.C. § 101; it asks whether a purportedly technological feature is a truly inventive technical solution rather than one that simply employs generic or conventional technology. Thus, just as the recitation of well-known and generic or conventional technology is insufficient to render claims patent-eligible under Section 101, it is also insufficient to render the claims a "technological invention" exempt from CBM review under Section 18 of the AIA.

Properly applying this standard, the Board correctly found that at least one claim in each of the '850 and '325 patents fails to recite any non-conventional technological feature and therefore that both the patents were subject to review under Section 18 of the AIA. As the Board correctly found, the patents themselves demonstrate that the allegedly "technological" features identified by Ameranth—synchronization, the display of menus on non-PC standard devices, and the

generation of hierarchical menus—merely involve known technologies. Thus, the Board correctly concluded that the features identified by Ameranth are insufficient to render claim 1 of the '850 patent or claim 1 of the '325 patent a "technological invention."

In its Final Written Decisions, the Board correctly ruled that claims 1-11 of the '850 patent and claims 1-10 of the '325 patent are patent-ineligible under 35 U.S.C. § 101. The claims purport to broadly cover the generic concept of generating a second menu from a first menu and sending the second menu to another location. Both the Supreme Court and this Court have consistently held that such concepts are patent-ineligible abstract ideas and that generic computer implementation fails to transform such abstract ideas into patent-eligible inventions. But even if, as Ameranth asserts, the claims go beyond the generic concept by requiring the conversion of data into a different format (which the claims do not), the outcome of the Section 101 analysis would remain the same. This Court has consistently held that claims reciting generic concepts relating to the manipulation and transmission of data are directed to patent-ineligible abstract ideas.

Nor did the Board preclude Ameranth from making its case by subsuming within the abstract idea the "additional elements" that Ameranth alleges render the claims patent-eligible. The Board expressly considered each of the "additional

14

elements" identified by Ameranth as purportedly supplying an inventive concept and correctly found each of them insufficient to render the claims patent-eligible. Those elements include (1) synchronous communication, (2) a hierarchical menu structure, (3) the central processing unit, (4) the display of menus on "non-PC standard devices," and (5) the requirement that the second menu be "applicable to a predetermined type of ordering." The patents themselves demonstrate that these elements, whether or not recited by the claims (some are not), amount to nothing more than the use of a conventional computer including conventional computer components performing conventional computer functions, which cannot transform a patent-ineligible abstract idea into a patent-eligible invention. Thus, the Board properly concluded that the claims convey nothing more meaningful than the abstract idea itself and are thus patent-ineligible under Section 101.

## STANDARDS OF REVIEW

Whether a patent qualifies for "covered business method" treatment under Section 18 of the AIA is a question of law that this Court reviews *de novo*. *Versata Dev. Grp. v. SAP Am., Inc.* 793 F.3d 1306, 1323-27 (Fed. Cir. 2015) (reviewing without deference the Board's determination that a patent is a "covered business method" and not a "technological invention" under Section 18 of the AIA).

Whether a claim is drawn to patent-eligible subject matter under 35 U.S.C.

§ 101 is also a question of law that this Court reviews *de novo*. *Ultramercial, Inc.*

*v. Hulu, LLC*, 772 F.3d 709, 713 (Fed. Cir. 2014); *In re Ferguson*, 558 F.3d 1359,

1363 (Fed. Cir. 2009).

## ARGUMENT

I.  **THE BOARD CORRECTLY FOUND THAT THE '850 AND '325 PATENTS ARE NOT DIRECTED TO A TECHNOLOGICAL INVENTION.**

Section 18 of the AIA establishes a transitional program under which the

Board conducts post-grant review proceedings relating to the validity of CBM

patents.  *See* AIA, Pub. L. 112-29, § 18, 125 Stat. 284, 329-31 (2011).  Patents for

"technological inventions" are excluded from the definition of CBM patents, and

thus are excluded from the category of patents subject to review under Section 18.

*Id.* at § 18(d)(1).  In *Versata*, this Court appears to have held that it has jurisdiction

to review the Board's decision to institute a CBM review proceeding, including its

determination that a patent does not constitute a technological invention.  793 F.3d

at 1323.[1]

---

[1]    The Director of the PTO ("Director"), as intervenor, argues that the Court lacks jurisdiction under *In re Hiniker Co.*, 150 F.3d 1362 (Fed. Cir. 1998), to review the "technological invention" finding because that threshold determination was effectively superseded by the Board's final decision.  *See* Director Br. 11-16. As the Director notes, however, it is ultimately immaterial to the proper outcome of this appeal whether the Court has jurisdiction to review the finding of no

Here, the Board correctly concluded that the '850 and '325 patents do not recite "a technological invention" and thus are subject to review under Section 18 of the AIA.  A1031; A1059.  The Board has stated—and Ameranth does not contest—that it "look[s] to whether the claims, not the specification" recite a novel technological feature and that "[a] patent need have only one claim directed to a covered business method to be eligible for review."  A1029; A1057; *see also* 77 Fed. Reg. 48734, 48736 (Aug. 14, 2012) ("A patent having one or more claims directed to a covered business method is a covered business method patent for purposes of the review, even if the patent includes additional claims.").  Applying this analysis, the Board concluded that at least one claim in each of the '850 and '325 Patents—claim 1 of each patent—meets the definition of a covered business method patent.  A1031; A1059.  That decision was plainly correct.

### A.   The Technological Invention Inquiry Does Not Involve a Novelty or Non-Obviousness Determination Under Sections 102 and 103.

Ameranth contends that the Board erred by not considering Ameranth's "objective evidence of non-obviousness" in conjunction with the "technological

---

technological invention because that threshold inquiry is essentially the same as the second step of the Section 101 inquiry.  *Id*. at 16; *see also infra* at 20.  Thus, affirmance of the Board's determination that the '850 and '325 patents fail to satisfy Section 101 because they recite no inventive technology necessarily means that they also do not involve a technological invention under Section 18 of the AIA.

invention" inquiry.  Opening Br. at 20.  But Ameranth's focus on non-obviousness is misplaced.  The threshold inquiry as to whether a patent qualifies as a covered business method under Section 18(d)(1) of the AIA, and therefore is subject to review within a CBM review proceeding, does not involve anything similar to a full-blown novelty or non-obviousness analysis under 35 U.S.C. §§ 102 or 103.  Such an analysis would be a question for the merits in cases where (unlike here) proceedings are instituted on those grounds.  The "technological invention" inquiry is far narrower; it asks only whether any claim of the patent, on its face, fails to recite a non-conventional *technological* feature.  It is immaterial to this inquiry whether a patent claim—including its non-technological features—might fail to satisfy the requirements of Sections 102 and/or 103 on the merits.

In this regard, the Court's recent decision in *Versata* is instructive.  Although the PTO has defined a "technological invention" as one in which the claims recite "a technological feature that is novel and unobvious over the prior art," 37 C.F.R. § 42.301(b), this Court recognized that, in reviewing the "technological invention" issue, there is "little cause" to consider novelty and non-obviousness, which "will be one of the ultimate questions if review is granted" on those grounds.  *Versata*, 793 F.3d at 1326-1327.  Rather, to be considered a "technological invention," the claims must, first and foremost, recite subject matter that is *technological*.  37 C.F.R. § 42.301(b) (defining a "technological invention

18

as one in which "the claimed subject matter as a whole recites a ***technological*** feature that is novel and unobvious over the prior art; and solves a ***technical*** problem using a ***technical*** solution") (emphases added).

The claimed technological feature, moreover, must be inventive rather than merely conventional or generic. As this Court has recognized, the PTO has identified "certain characteristics which, if present, [weigh against] a finding that the invention [is a] technological invention." *Versata*, 793 F.3d at 1326; *see also* Office Patent Trial Practice Guide, 77 Fed. Reg. 48756, 48763-64 (Aug. 14, 2012). Those characteristics include: "(1) mere 'recitation of known technologies'; (2) 'reciting the use of known prior art technology'; and (3) 'combining prior art structures to achieve the normal, expected, or predictable result of that combination.'" *Versata*, 793 F.3d at 1326 (quoting 77 Fed. Reg. at 48764).

In *Versata*, the Court concluded that the alleged technological feature—a "hierarchical data structure" implemented on a computer—was insufficient to preclude CBM review. 793 F.3d at 1327. As the Court explained, "even if the invention required the use of a computer, the claim did not constitute a technological invention" because the use of "a general purpose computer to facilitate operations through uninventive steps does not change the fundamental character of an invention" and because the asserted feature "is not a technical solution but more akin to creating organizational management charts." *Versata*,

793 F.3d at 1327 (citing *Alice*, 134 S. Ct. 2347).  In this regard, the novelty and

non-obviousness component of the technological invention inquiry is akin to the

search for an inventive concept under Section 101; it asks whether a purportedly

technological feature is a truly inventive technical solution rather than one that

simply employs conventional technology.  *Cf. Alice*, 134 S. Ct. at 2359 (holding

that recitation of "well-understood," "routine," or "conventional" features cannot

transform abstract ideas into patent-eligible claims).

Under Section 18(d)(1) of the AIA, it is this threshold review that the Board

undertakes regardless of whether the claims satisfy Section 102 or 103.  As the

PTO has made clear, "[r]eciting the use of known prior art technology to

accomplish a process or method" does not constitute a technological invention

"***even if that process or method is novel and non-obvious***."  77 Fed. Reg. at 48764

(emphasis added); s*ee also* A1029; A1057.  Here, the Board correctly concluded

that the features identified by Ameranth are insufficient to render claim 1 of the

'850 patent and claim 1 of the '325 patent a "technological invention," because

those features are nothing more than the recitation of known technologies.  A1029-

31; A1057-59.  To support these findings, the Board relied on evidence from the

patents themselves, which demonstrate that the features identified by Ameranth

were well-known at the time of the '850 and '325 patents.  *See infra* at 22-30.  The

Board's findings are further confirmed by the patents' failure to describe any non-

prior art means for implementing the claims.[2]  *See* Director Br. at 10 ("The

Board's conclusions regarding the conventional nature of the claim limitations are

"confirmed . . . by the specification's failure to describe any non-prior art means

for implementing the [claims].").

Ameranth now faults the Board for not also addressing its purported

"objective evidence of non-obviousness."  Opening Br. at 20 (citing A1149-52).

But Ameranth's criticism is misplaced.  This evidence fails to identify a

technological feature involving anything other than the recitation of well-known

and conventional technology.  *See* A1149-52.  And the Board's inquiry properly

focused on the claim language itself.  A1029; A1057; 77 Fed. Reg. at 48736

("Consistent with the AIA, the definition set forth in § 42.301(a), as adopted in this

final rule, is based on what the patent ***claims***.") (emphasis added).  In any event

even if the Board were required to engage in an obviousness determination in

deciding this threshold issue—and it is not—the proffered material consists only of

general, non-specific statements lacking any demonstrated nexus to any patent

---

[2]    This Court's opinions and the U.S. Patent Office's Manual of Patent
Examining Procedure ("MPEP") instruct that a patent specification "need not
teach, and preferably omits, what is well known in the art."  *Hybritech Inc. v.
Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1384 (Fed. Cir. 1986); *see also*
MPEP § 2164.05(a).  Thus, to the extent the patents leave the implementation of
any claim elements unelucidated, the patents make clear that they are to be
implemented through pre-existing, conventional technology.

claim.  *See* A1149-52.  Without the requisite nexus, such statements could not

establish non-obviousness.  *See*, *e.g.*, *Muniauction Inc. v. Thomson Corp.*, 532 F.3d

1318, 1327-28 (Fed. Cir. 2008).

### B.    The '850 and '325 Patents Are Not Directed to a Technological Invention.

Ameranth asserts that the claims of the '850 and '325 patents are directed to

"solving the problem of how to display and synchronize computerized multi-level

menus on non-standard devices/interfaces," and alleges that the Board failed to

consider these alleged "technological features" in determining that the patents are

not directed to a technological invention.  *See* Opening Br. at 21.  Just as in

*Versata*, however, the features identified by Ameranth involve known technologies

combined to achieve the normal, expected, or predictable result of that

combination.  A1029-31 (concluding that, to the extent any features recited by the

claims are "technological," they are merely the "recitation of known

technologies"); A1057-59 (same); *see also Versata* 793 F.3d at 1326-27.  Both this

Court and the PTO have made clear that the recitation of known technologies is

insufficient to render the claims a "technological invention."  *Versata*, 793 F.3d at

1326; *see also* 77 Fed. Reg. at 48764.  Thus, the Board correctly determined that

the '850 and '325 patents do not recite a technological invention.

### 1.     Synchronization.

Ameranth contends the claims at issue in this appeal require "functionality for 'synchronizing' a newly generated menu."  Opening Br. at 23.  To support this argument, Ameranth relies on the preambles to claims 1-10 of the '850 patent and claims 1-11 of the '325 patent, which recite a "synchronous communications system."  *Id.*  According to Ameranth, the Board "fail[ed] to give effect to the 'synchronous communication' limitation of the preamble" and thus erred in determining that the patents are not directed to a technological invention.  *Id.*

It is immaterial, however, whether the preambles are limiting, because "synchronous communication" is nothing more than the recitation of a conventional and well-known technology.  The patents themselves demonstrate that synchronization was a known technology at the time of the '850 and '325 patents.  For example, the patents state that operating systems in existence at the time of the patents, such as Windows® CE, included "built in synchronization between handheld devices, internet and desktop infrastructure."  A79-80 at 10:63-11:3; A95 at 11:9-16.  At the oral hearing, Ameranth explained that the synchronization described in the patents requires nothing more than simply downloading.  A1475 at ll. 9-16.  Specifically, Ameranth stated that "downloading [a] menu" from one device to another device "is synchronizing the data between those two devices." *Id.*  The patents do not—and indeed cannot—assert that the

concept of downloading was anything other than a conventional or generic computer function at the time of the '850 and '325 patents.

In any event, the Board correctly determined that the preamble is not limiting and thus the claims at issue in this appeal do not include limitations relating to synchronization. *See* A11; A44. That ruling properly applies this Court's precedent that a preamble is limiting only where it recites essential structure or steps, or if it is "'necessary to give life, meaning, and vitality' to the claim." *Pitney Bowes Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999) (quoting *Kropa v. Robie*, 187 F.2d 150, 152 (CCPA 1951)). Where the claim defines a structurally complete invention and the preamble only states a "purpose or intended use of the invention," it is not limiting. *Id*.; *see also IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434 (Fed. Cir. 2000).

In *IMS Technology*, this Court held that the preamble phrase "control apparatus" was not limiting because it "merely [gave] a descriptive name to the set of limitations in the body of the claim that completely set forth the invention." 206 F.3d at 1434. The claims at issue here are no different. The preamble phrase "synchronous communications system" does not recite any structural components not already captured in the body of the claims; instead, it merely gives a descriptive name to the system described in the body of the claims. Accordingly,

even if synchronization were a technological invention (and it is not), the claims at issue do not include any such limitations because the preamble is not limiting.

## 2.    Display of Menus on Non-PC Standard Devices.

Despite Ameranth's assertion to the contrary (*see* Opening Br. at 21), the claims at issue in this appeal do not include limitations relating to the display of menus on non-PC standard devices.  Instead, the claims recite "a first menu," "a modifier menu," and "a sub-modifier menu," all of which are "displayable in a window of [a] graphical user interface."  *See*, *e.g.*, A81-82 at 14:48-15:11; A96-97 at 14:60-15:24.  Thus, the display limitations present in the claims merely require a menu displayable in a window of a GUI.

Ameranth does not contest that displaying a menu in a window of a GUI simply involves the application of well-known, conventional, or generic technology.  Indeed, the patents themselves demonstrate that displaying a menu in a window of a GUI—even on a non-PC standard device—was well-known at the time of the '850 and '325 patents.  For example, the patents explain that "[t]he use of menus is conventional in GUIs,"  A77 at 5:17-18; A92 at 5:22-23, and "[m]ost personal computers today run under an operating system that provides a [GUI] for accessing user applications . . . [t]hrough an interface of windows, pull-down menus, and toolbars," A76 at 4:59-63; A91-92 at 4:64-5:1.  *See also* A77 at 5:18-20 ("Menus are typically utilized to provide end users of applications with

available choices or processing options while using the applications."); A92 at

5:23-25 (same).  The patents further explain that "common GUI operating

systems" include both PC-standard operating systems, such as Microsoft

Windows® for personal computers, and non-PC standard operating systems, such

as Windows® CE for wireless handheld devices. A77 at 5:6-10; A92 at 5:11-15.

As the Board correctly concluded, "[m]ere recitation of known

technologies," such as the display of a menu in a window of a GUI, "do not render

a patent a technological invention."  A1030; A1058; *see also Versata*, 793 F.3d at

1326.

### 3.      Generation of Hierarchical Menus.

The generation of hierarchical menus was also a known, conventional or

generic computer function that is insufficient to render the patents a "technological

invention."  In *Versata*, this Court concluded that merely reciting a computer was

insufficient to render a patent a technological invention where the claims can be

implemented using a conventional computer without specialized hardware or

software.  *Versata*, 793 F.3d at 1327.  The claims at issue in that case recited "[a]

method for determining a price of a product" by creating hierarchical groups of

both customers and products and associating pricing information with the groups.

*Id.* at 1311-13.  The Court concluded that, "even if the [claims] required the use of

a computer," the claims did not constitute a technological invention because the

pricing determination recited by the claims "could be achieved in any type of computer system or programming or processing environment" without "specific, unconventional software, computer equipment, tools or processing capabilities." *Id.* at 1327 (internal quotation marks omitted).

Like the claims at issue in *Versata*, the menu generation claimed in the '850 and '325 patents can be achieved by any type of conventional or generic computer system, without specialized software or hardware. In this regard, the '850 and '325 patents state that the display and generation of hierarchical menus is "***conventional*** in GUIs for software applications." A77 at 5:17-18 (emphasis added); A92 at 5:22-23 (emphasis added). The patents explain that a "typical" menu system for a software application includes "cascading sets of menus which are displayable in context to show the parent/child relationships between options of the context menu." A77 at 5:20-32; A92 at 5:25-38. The patents also explain that a conventional GUI, such as Microsoft Windows® and Windows® CE, can be used to generate a hierarchical menu. A76-77 at 4:66-5:10 (explaining that entries within a hierarchical menu "can be created, deleted, modified, and arranged" using a GUI such as Microsoft Windows® and Windows® CE); A92 at 5:4-15 (same). Further, the patents equate the claimed menus to known technology, stating that the claimed menus are "similar to the Windows® File Explorer in the way the items are organized hierarchically." A77 at 6:51-53; A92 at 6:64-66.

The patents also explain that the hardware and software components recited by the claims are "typical." In this regard, the patents state:

> The preferred embodiment of the present invention uses ***typical hardware elements in the form of a computer workstation, operating system and application software elements*** which configure the hardware elements for operation in accordance with the present invention. ***A typical workstation platform includes hardware such as a central processing unit ("CPU"), e.g., a Pentium® microprocessor***, RAM, ROM, ***hard drive storage*** in which are stored various system and application programs and data used within the workstation, modem, ***display screen, keyboard, mouse*** and optional removable storage devices such as floppy drive or a CD ROM drive. The workstation hardware is configured by software including ***an operating system, e.g., Windows® 95, 98, NT or CE***, networking software (including internet browsing software) and ***application software components***.

A77 at 5:34-47 (emphases added); A92 at 5:39-53 (emphases added); *see also* A77 at 5:48-55 (stating that the invention "also encompasses a ***typical*** file server platform") (emphasis added); A92 at 5:54-61 (same).

Ameranth incorrectly attempts to distinguish *Versata* on the ground that its patents "recite[] unconventional application software." Opening Br. at 22, n.17; *see also id.* at 21, n.16. The patents recite no unconventional application software. To the contrary, the patents expressly state that "[t]he use of menus is ***conventional*** in GUIs for software applications" (A77 at 5:17-18 (emphasis added); A92 at 5:22-23 (emphasis added)), that "[t]he software applications for performing the functions falling within the described invention can be written in any commonly used computer language," and that "***[t]he discrete programming***

28

*steps are commonly known* and thus programming details are not necessary to a full description of the invention" (A80 at 11:43-48 (emphasis added); A95 at 11:56-61 (emphasis added)). *Versata* applies squarely to the '850 and '325 patents because the patents do not recite a technological invention and implementation of the purported invention "could be achieved in any type of computer system or programming or processing environment," and "no specific, unconventional software, computer equipment, tools or processing capabilities are required." 793 F.3d at 1327 (internal quotation marks omitted).

Ameranth's reliance on prior art references (*see* Opening Br. at 19) is also misplaced. As noted above, the technological invention inquiry does not require the Board or this Court to conduct a merits-based novelty or obviousness inquiry. *See supra* at 17-20. Even if, as Ameranth contends, its claimed method were novel (and Appellees contend that it is not), that contention is immaterial to the inquiry under Section 18(d)(1) of the AIA, as the patents merely recite the use of conventional technology to accomplish the method. As the PTO has correctly explained, "[r]eciting the use of known prior art technology to accomplish a process or method" is not a technological invention, "even if that process or method is novel and non-obvious." 77 Fed. Reg. at 48764; s*ee also* A1029; A1057.

The '850 and '325 patents demonstrate that the recited menu generation requires nothing more than conventional computer functions performed by conventional or generic computer hardware and software. As the Board correctly held, the "[m]ere recitation of known technologies or combinations of prior art structures to achieve the normal, expected, or predictable result[s] do not render a patent a technological invention." A1030; A1058; *see also Versata*, 793 F.3d at 1326. The Board therefore properly instituted review.

## II. THE BOARD CORRECTLY DETERMINED THAT CLAIMS 1-11 OF THE '850 PATENT AND CLAIMS 1-10 OF THE '325 PATENT ARE PATENT-INELIGIBLE UNDER 35 U.S.C. § 101.

Under 35 U.S.C. § 101, abstract ideas are patent-ineligible subject matter and may not be removed from the public domain. *See Alice*, 134 S. Ct. at 2354 ; *Mayo Collaborative Services v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012); *Bilski*, 561 U.S. at 601-02. Such ideas are not patent-eligible because they are basic tools in the "storehouse of knowledge" that are "free to all . . . and reserved exclusively to none." *Bilski*, 561 U.S. at 602 (internal citation omitted); *see also Alice*, 134 S. Ct. at 2354. Under the Supreme Court's now-familiar two-step test, an alleged invention is patent-ineligible if (a) the claims are directed to an abstract idea, and (b) there are no "additional elements" set forth in the claims that supply "an 'inventive concept' sufficient to 'transform' the claimed abstract idea

into a patent-eligible application." *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 132 S. Ct. at 1294, 1298).

Simply reciting an abstract idea and adding "well-understood," "routine," or "conventional" features contributes nothing inventive and thus does not transform the claims into a patent-eligible application of the abstract idea. *Id.* at 2359. For example, the Supreme Court explained in *Alice* that "[g]iven the ubiquity of computers, wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Alice*, 134 S. Ct. at 2358 (quoting *Mayo*, 132 S. Ct. at 1297). Limiting the alleged invention to a particular technological environment or field of use is likewise insufficient to transform the claimed abstract idea into a patent-eligible application of that idea. *See Bilski*, 561 U.S. at 612; *Parker v. Flook*, 437 U.S. 584, 593 (1978).

As was true in *Alice*, *Bilski*, and their progeny, the '850 and '325 patents improperly attempt to claim an abstract idea implemented through generic and conventional computer technology. Accordingly, the Board correctly held that claims 1-11 of the '850 patent and claims 1-10 of the '325 patent are patent-ineligible under 35 U.S.C. § 101. A29; A65.

## A.    The Claims Are Directed to a Patent-Ineligible Abstract Idea.

As demonstrated by the illustrative claims set forth above, the claims at issue in this appeal recite a system that generates a second menu from a first menu and transmits the second menu to another location, such as a handheld device or Web page. *See*, *e.g.*, A81-82 at 14:48-15:11; A96-97 at 14:60-15:24. The claims do not include any meaningful limitations regarding how the second menu is generated or transmitted. To the contrary, the patents state that "***any means*** for displaying the master menu to the user and generating another menu in response to and comprised of the selections made ***is encompassed by the contemplated invention***." A81 at 13:55-58 (emphases added); A96 at 14:1-4 (emphases added). Likewise, the patents state, with respect to transmission of the second menu, that "***[a]ny*** display and ***transmission means*** known to those skilled in the art ***is equally usable*** with respect to menus generated in accordance with the claimed invention." A81 at 14:26-29 (emphases added); A96 at 14:38-41 (emphases added). Thus, as the Board correctly determined, the claims purport to broadly cover the generic concept of generating a second menu from a first menu and sending the second menu to another location. A19; A59.

Both the Supreme Court and this Court have consistently held that such generic concepts are patent-ineligible abstract ideas. For example, in *Alice* and *Bilski*, the Supreme Court held that claims reciting generic business concepts such

as a method for mitigating settlement risk and a method for hedging risk,

respectively, are directed to patent-ineligible abstract ideas.  *See*, *e.g.*, *Alice*, 134 S.

Ct. at 2355-57; *Bilski*, 561 U.S. at 609-612.  Similarly, in *buySAFE, Inc. v. Google,*

*Inc.*, 765 F.3d 1350, 1354-55 (Fed. Cir. 2014), this Court held that claims reciting a

method of "creating a contractual relationship" were directed to a patent-ineligible

abstract idea.  In *Ultramercial*, this Court held that claims reciting a method of

displaying an advertisement in exchange for access to copyrighted media were

directed to a patent-ineligible abstract idea.  772 F.3d at 714-17.  And most

recently, in *Versata*, this Court held that claims reciting a method of "[u]sing

organization and product group hierarchies" to determine a price were directed to a

patent-ineligible abstract idea.  793 F.3d at 1331-36.

     In *Versata*, the Court explained that the claims were directed to an abstract

idea because they recited "a basic conceptual framework for organizing

information."  *Id.* at 1333-34.  The Court equated the claims to those found to be

patent-ineligible in other cases involving "collecting, recognizing, and storing

data."  *Id.*; *see also CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366,

1370-73 (Fed. Cir. 2011) (finding a computerized method involving the "collection

and organization of data regarding credit card numbers and Internet addresses" to

be an abstract idea); *Content Extraction & Transmission, LLC v. Wells Fargo*

*Bank, Nat'l Assoc.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (finding a computerized

method of extracting data from a hardcopy document using a scanner, recognizing

specific information in the extracted data, and storing this information in a memory

to be an abstract idea).

Like the claims that were found to be patent-ineligible in *Versata*, the claims

of the '850 and '325 patents recite nothing more than "a basic conceptual

framework for organizing information."  793 F.3d at 1333-34.  For example, the

claims recite generating a second menu by selecting menu categories (*e.g.*, Entrees,

Desserts, etc.), menu items (*e.g.*, Lamb, NY Strip, etc.), menu modifiers (*e.g.*

Vegetables, Meat Temperature, etc.), and sub-modifiers (*e.g.*, Med. Rare, Med

Well, etc.) from a first menu and transmitting the second menu to another location.

*See*, *e.g.*, A81-82 at 14:48-15:11; A96-97 at 14:60-15:24; *see also* A77 at 6:14-48;

A92 at 6:24-61.  The menu hierarchies (*e.g.*, menu categories, items, modifiers and

sub-modifiers) recited by the claims of the '850 and '325 patents—like the

organization and product hierarchies recited by the claims in *Versata*—are nothing

more than a basic conceptual framework for organizing information.  *See Versata*,

793 F.3d at 1333-34.

Ameranth argues that the claims of the '850 and '325 patents go beyond the

basic concept of generating a second menu from a first menu and sending the

second menu to another location because they "require that one form of menu

structure is transformed into another."  Opening Br. at 51.  As an initial matter, the

claims do not include any such requirement.  Instead, the claims simply recite

"generating a second menu from [a] first menu" by "select[ing] categories and

items from the first menu."  *See*, *e.g.*, A81-82 at 14:48-15:11; A96-97 at 14:60-

15:24.

Even if the claims did recite manipulating the menu information to change

its structure, however, the outcome of the Section 101 analysis would remain the

same.  This Court has consistently held that "[a]ny transformation from the use of

computers or the transfer of content between computers is merely what computers

do and does not change the [patent-eligibility] analysis." *Ultramercial*, 772 F.3d at

717.[3]  Even under Ameranth's conception of its claims, they involve merely

"[c]onverting . . . data . . . into a second, different, form of that data" using generic

computer components and routine, well-known functionality.  *See* Opening Br. at

---

[3]    *See also Intellectual Ventures I LLC v. Capital One Bank,* 792 F.3d 1363,
1367-68 (Fed. Cir. 2015) (finding a computerized method of customizing web page
content as a function of navigation history and information about the user to be an
abstract idea); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348
(Fed. Cir. 2015) (finding a computerized method of maintaining state during
navigation of online forms to be an abstract idea); *Content Extraction*, 776 F.3d at
1347 (finding a computerized method of extracting data from a hardcopy document
using a scanner, recognizing specific information in the extracted data, and storing
this information in a memory to be an abstract idea); *CyberSource*, 654 F.3d at
1370-73 (finding a computerized method involving the "collection and
organization of data regarding credit card numbers and Internet addresses" to be an
abstract idea).

52. But "[t]he mere manipulation or reorganization of data" does not render claims patent-eligible. *CyberSource*, 654 F.3d at 1375.

Nor did the Board improperly preclude Ameranth from making its case by purportedly subsuming within the abstract idea the "additional elements" that Ameranth alleges render the claims eligible. *Cf.* Opening Br. at 49-50. As explained below, the Board expressly considered each of the "additional elements" identified by Ameranth as purportedly supplying an inventive concept and correctly found each insufficient to render the claims patent-eligible. *See* A19-28; A59-65. Ameranth identifies no argument that the Board did not consider or that Ameranth was precluded from presenting. For example, Ameranth apparently faults the Board's Final Written Decisions for noting that the abstract idea includes transmitting a menu to another location rather than just generating the menu. *See* A19; A59. But the Board's decisions expressly considered and rejected Ameranth's contention that transmitting a menu to another location (including a Web page) is a sufficiently inventive concept to transform the claims into patentable subject matter, correctly noting that such activity "is merely a conventional post-solution activity." A21-22; A61-62.

Accordingly, the precedents of both the Supreme Court and this Court confirm that the generic concepts recited by claims 1-11 of the '850 patent and claims 1-10 of the '325 patent are patent-ineligible abstract ideas.

**B.    The "Additional Elements" Identified by Ameranth Are Insufficient to Impart Patent Eligibility.**

Ameranth argues that the claims at issue in this appeal recite "additional elements" sufficient to render the claims patent-eligible, including: (1) synchronous communication elements, (2) a hierarchical menu structure, (3) the purportedly specialized nature of the central processing unit ("CPU"), (4) the alleged requirement that the second menu be displayable on "non-PC standard devices," and (5) the requirement that the second menu be "applicable to a predetermined type of ordering." *See* Opening Br. at 36-49, 57-58. But the purported "additional elements" identified by Ameranth either (a) are not recited by the claims, and/or (b) amount to nothing more than the mere recitation of a generic computer performing generic computer functions, which "cannot transform a patent-ineligible abstract idea into a patent eligible invention." *Alice*, 134 S. Ct. at 2358. Thus, the Board correctly concluded that the claims "convey[ ] nothing more meaningful than the [abstract idea itself]." A22; A62.

**1.    Synchronous Communication Is Not an "Additional Element" Sufficient to Impart Patent Eligibility.**

Ameranth argues that the claims at issue require "functionality for 'synchronizing' a newly generated menu." Opening Br. at 23. To support this argument, Ameranth relies on the preambles to claims 1-10 of the '850 patent and claims 1-11 of the '325 patent, both of which recite a "synchronous

communications system." *Id.*  As explained above, however, the Board correctly determined that the preambles are not limiting. and thus the claims at issue do not include any limitations relating to synchronization. *See supra* at 23-25.[4]

In any event, it is immaterial whether the preambles are limiting, because "synchronous communication" is nothing more than the recitation of a conventional computer function.  At the oral hearing, Ameranth explained that the synchronization described in the patents requires nothing more than simply "downloading [a] menu" from one device to another device.  A1475 at ll. 9-16. Although the Board found that the preambles are not limiting, it nonetheless agreed with Ameranth that the claims require downloading a menu so that the menu is the same on two devices.  A9-10; A42.  Neither Ameranth nor the patents themselves, however, claim that the concept of downloading was anything other than a conventional computer function at the time of the '850 and '325 patents, nor could they given the well-known nature of this generic computer function.

---

[4]     Ameranth contends that the Board erred by failing to consider the claim constructions previously adopted by the district court.  Opening Br. at 24, 25 n.19. But the Board ***did*** consider the district court's claim constructions and properly declined to adopt them because it was not persuaded that the district court constructions were the broadest reasonable construction in the light of the specification.  *See*, *e.g.*, A13-14; A46; *see also Power Integrations, Inc. v. Lee*, 797 F.3d 1318, 1326 (Fed. Cir. 2015) ("There is no dispute that the [B]oard is not generally bound by a prior judicial construction of a claim term.").

Ameranth asserts that the "'synchronous communication' aspect of the claims" is "non-conventional[]" because "'synchronization' requires a system that communicates in ***both directions***."  Opening Br. at 37 (emphasis in original).  The patents themselves demonstrate, however, that synchronization—including the ability to communicate in both directions—was a well-known computer function at the time of the '850 and '325 patents.  The patents state that operating systems in existence at the time of the patents, such as Windows® CE, included "built in synchronization" between multiple devices.  *See* A79 at 10:63-11:3; A95 at 11:9-16.  The patents therefore acknowledge that the ability to communicate in both directions between multiple devices was a well-known computer function at the time of the '850 and '325 patents.[5]

The Board thus correctly concluded that the downloading described by the patents is "merely a conventional post-solution activity" that "is not sufficient to transform the abstract idea into patent-eligible subject matter."  A22; A62.

---

[5]    To the extent Ameranth contends that the ability to "communicate in both directions" requires something more than transmitting menus between multiple devices, that argument was not presented in Ameranth's Patent Owner Response in the proceedings before the Board and has thus been waived.  *See In re Baxter*, 678 F.3d 1357, 1362 (Fed. Cir. 2012).

### 2. The Display and Generation of Hierarchical Menus Is a Conventional Computer Function That Is Insufficient to Impart Patent Eligibility.

Ameranth contends that the term "menu" should be construed to require a menu with a hierarchical structure and argues that, if the term were construed in that way, it would be sufficient to render the claims patent-eligible. Opening Br. at 39-40. Despite Ameranth's assertion to the contrary, however, the Board *did* construe the claims to require a "first menu [that] is displayable in a hierarchical tree format." A21; A60. Thus, Ameranth seems to fault the Board for declining to import the hierarchical structure requirement into every instance of the term "menu." Even if the term "menu" were construed to require a hierarchical structure, however, it would still be insufficient to impart patent eligibility.

As explained above, the patents themselves demonstrate—and thus the Board correctly concluded—that the generation and display of hierarchical menus is a "typical" computer function that requires no specialized hardware or software. *See supra* at 25-30; *see also* A77 at 5:20-32 (stating that a "typical" menu system for a software application includes "cascading sets of menus which are displayable in context to show the parent/child relationships between options of the context menu"); A92 at 5:25-37 (same). As an example, the patents explain that a conventional GUI operating system, such as Microsoft Windows® and Windows® CE, can be used to generate a hierarchical menu. A76-77 at 4:66-5:10 (explaining

that entries within a hierarchical menu "can be created, deleted, modified, and arranged" using a GUI operating system such as Microsoft Windows® and Windows® CE); A92 at 5:4-15 (same).  The patents also explain that the hardware and software components recited by the claims are "typical."  A77 at 5:34-55; A92 at 5:39-61.  Thus, the Board correctly concluded that generating and "displaying menus in a GUI, ***including in a hierarchical format***, is a well-understood, routine, conventional activity that does not add significantly more to the abstract idea." A21 (emphases added); A61 (emphases added).[6]

Ameranth relies on *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), in support of its arguments, but its reliance is misplaced.  *Cf.* Opening Br. at 55-56.  The Court explained in *DDR Holdings* that merely requiring the use of a computer is insufficient to render claims patent-eligible where the claims simply "recite a commonplace business method aimed at processing business information, applying a known business process to the particular technological environment of the Internet, or creating or altering contractual

---

[6]     Ameranth contends that the Board's determination that this and other elements of the patents merely involved conventional computer technology and functionality lacked evidentiary support.  *See*, *e.g.*, Opening Br. at 48.  To the contrary, the determinations were based on the most authoritative evidence of all— the patents themselves.  *See*, *e.g.*, *Internet Patents*, 790 F.3d at 1348 (relying solely on statements in the patent specification to find that recited internet browser functionality was conventional).

relations using generic computer functions and conventional network operations." 773 F.3d at 1259.  As shown, the computer-related limitations of the '850 and '325 patents are nothing more than the recitation of a generic computer performing generic computer functions, which cannot transform a patent-ineligible abstract idea into a patent-eligible invention.  *Id.*; *see also Alice*, 134 S. Ct. at 2358.  Unlike the claims at issue in *DDR Holdings*, Ameranth's menu-generation claims do not involve "an inventive concept for resolving [a] particular Internet-centric problem."  773 F.3d at 1259.  Ameranth's patents merely seek to migrate the age-old concept of generating and transmitting menus onto a computer, using "well-understood, routine, conventional activity that does not add significantly more to the abstract idea."  A20-23; A59-62.

Moreover, the Board properly construed the term "menu," noting that nothing in the specification "provides support for [Ameranth's] proposed construction."  A13; A46.  Although the patents disclose that some menus include a hierarchical structure, they also contemplate others that do not.  For example, the patents explain that "selection of a 'file' from a menu bar may cause display of a context menu [that] provides 'file' options," which "***can*** have additional subordinate or child options associated with them."  A77 at 5:20-24 (emphasis added); A92 at 5:25-29 (emphasis added).  The specification also contemplates, however, that not all menus will have subordinate or child options.  A77 at 5:24-27

("*If* a file option having subordinate options is selected, the child options are displayed.") (emphasis added); A92 at 5:29-32 (same). Thus, the "broadest reasonable interpretation" in light of the specification, *see In re Cuozzo Speed Technologies, LLC*, 793 F.3d 1268, 1278 (Fed. Cir. 2015); 37 C.F.R. § 42.300(b), must encompass both menus that include a hierarchical structure and those that do not.

The Board correctly gave the term "menu" its ordinary and customary meaning—"a list of options available to a user displayable on a computer." A14; A47. Generation of such a menu is unquestionably a routine, conventional activity that is insufficient to impart patent-eligibility to the claims at issue.

### 3. The Recited Central Processing Unit Is a Generic Computer Component That Is Insufficient to Impart Patent Eligibility.

Ameranth argues that the Board erred in construing "central processing unit" as "the computational and control unit of a computer" because "[t]he recited central processing unit is not a generic CPU or 'microprocessor.'" Opening Br. at 34. Ameranth asserts that "central processing unit" should instead be construed as a "central server."[7]

---

[7]     To support its argument, Ameranth relies on a previous district court construction. *See* Opening Br. at 34 (citing Judge Everingham's construction of the preamble). But Ameranth's reliance on that construction is misplaced because it is for *a different claim term*. A3174-75 (discussing "information management

Ameranth's proposed construction cannot be the broadest reasonable interpretation of the term, because it is inconsistent with the plain meaning of "central processing unit" and contrary to the specification. The patents repeatedly equate the claimed "central processing unit"—in both the computer workstation and server embodiments—with a conventional CPU or microprocessor. *See*, *e.g.*, A77 at 5:37-39, 5:48-50; A92 at 5:43-45; 5:54-56. Thus, the Board correctly concluded that the recited "central processing unit" is nothing more than a conventional CPU, *i.e.*, "the computational and control unit of a computer." *See* A12-13; A44-45.

Regardless, even if Ameranth's proposed construction were correct, the patents demonstrate—and the Board correctly found—that the server embodiment described by the '850 and '325 patents is merely a generic computer element rather than an inventive concept sufficient to impart patent eligibility. The patents state:

> The preferred embodiment also encompasses a ***typical file server platform*** including hardware such as a CPU, e.g., Pentium® microprocessor, RAM, ROM, hard drive, modem, and optional removable storage devices, e.g., floppy or CD ROM drive. The server hardware is configured by software including an operating system, e.g., Windows® 95, 98, NT or CE, networking software (including Web server software) and database software.

---

and synchronous communications system" claim term). The district court did not construe the term "central processing unit."

A77 at 5:48-55 (emphasis added); A92 at 5:54-61 (emphasis added).  Thus, the

server embodiment described by the '850 and '325 patents is a "typical file server"

including generic computer hardware and software.  And the Board expressly

found that all of the claim elements identified by Ameranth, including the CPU,

"require nothing more than a generic computer with generic computer

elements performing generic computer functions," and are therefore insufficient to

impart patent eligibility.  A20 (citing *Alice*, 134 S. Ct. at 2358); A60 (same).

> **4.      Display of Menus on Non-PC Standard Devices Is Not an "Additional Element" Sufficient to Impart Patent Eligibility.**

As explained above, the claims do not include limitations relating to the

display of menus on non-PC standard devices.  *See supra* at 25-26.  There can be

no credible argument, therefore, that such non-existent limitations supply an

inventive concept sufficient to render Ameranth's claims patent-eligible under

Section 101.

Regardless, the patents demonstrate—and the Board correctly concluded—

that displaying a menu in a window of a graphical user interface, even on a non-PC

standard device, was well-known and conventional at the time of the '850 and '325

patents.  *See supra* at 25-26.  For example, the patents explain that "[t]he use of

menus is conventional in GUIs." A77 at 5:17-18; A92 at 5:22-23; *see also* A76 at

4:59-63 ("Most personal computers today run under an operating system that

provides a [GUI] for accessing user applications . . . [t]hrough an interface of windows, pull-down menus, and toolbars."); A91-92 at 4:64-5:1 (same). The patents also state that "common GUI operating systems" include both Microsoft Windows® for personal computers, a PC-standard operating system, and Windows® CE for wireless handheld devices, a non-PC standard operating system. A77 at 5:6-10; A92 at 5:11-15. And as the Board expressly found, "[m]enus that are capable of being displayed on a wireless computing device or computers networked on the internet are conventional and well-known and, thus, do not add significantly more to the abstract idea so as to make these claims patent eligible." A25 (citing *Mayo*, 132 S.Ct. at 1298); *see also* A60-61. Thus, the Board correctly concluded that the display of menus on both PC standard and non-PC standard devices was a well-known, generic computer function at the time of the patents and is therefore insufficient to impart patent eligibility.

### 5. The Use of a Well-Known, Predetermined Type of Ordering Is Not Sufficient to Impart Patent Eligibility.

Claim 1 of the '325 patent recites that the second menu is "applicable to a predetermined type of ordering," while claims 2-6 further define "the type of ordering" as "table-based customer ordering," "drive-through customer ordering," "customer ordering via internet," "customer ordering via telephone," and "customer ordering via wireless device," respectively. A96-97 at 14:60-15:34.

Ameranth does not—and indeed cannot—argue that the types of ordering recited in claims 2-6 are inventive concepts sufficient to impart patent eligibility. In this regard, this Court's opinion in *buySAFE* is instructive. In that case, the Court invalidated claims that were directed to the abstract idea of creating contractual relationships and concluded that dependent claims "narrowing to particular types of [contractual] relationships, themselves familiar, [did] not change the analysis." *buySAFE*, 765 F.3d at 1354-55.

Ameranth argues that the "predetermined type of ordering" limitation of claim 1 requires that the "second menu" be "capable of . . . transmitting selections from the second menu to a receiving computer." Opening Br. at 57-58. Ameranth made a similar argument in response to the petition for CBM review of the '325 patent. There Ameranth argued that the "predetermined type of ordering" limitation required the "transmission of selections from the second menu to a receiving computer at the back office/central server/database" because "that is the nature of 'ordering' electronically." A1279.

Contrary to Ameranth's assertion, and as the Board correctly concluded, the claims include no such requirement. A64-65. The claims simply require that the "second menu [is] applicable to a predetermined type of ordering," some of which are electronic methods of ordering—"customer ordering via the internet," and "customer ordering via a wireless devices"—and some of which may be

47

accomplished without electronic means—"table-based customer ordering," "drive-through customer ordering," and "customer ordering via telephone." A96-97 at 14:60-15:34.

Even if the claims did require transmission of selections from the second menu to another location, however, the Board correctly held that such transmission of information is not an inventive concept sufficient to impart patentability. This Court has consistently held that claims reciting generic concepts such as storing, manipulating, and transmitting information are directed to patent-ineligible abstract ideas. *See*, *e.g.*, *Intellectual Ventures,* 792 F.3d at 1367-68; *Internet Patents*, 790 F.3d at 1348; *Content Extraction*, 776 F.3d at 1347; *CyberSource*, 654 F.3d at 1370-73. Thus, the Board correctly concluded that the "predetermined type of ordering" limitations are insufficient to "transform the claim[s] into a patent eligible application of an abstract idea." A62; A64-65.

## CONCLUSION

For the foregoing reasons, the Court should affirm the Board's decisions.

Dated:  October 30, 2015

Respectfully submitted,

/s Stanley J. Panikowski
Mark D. Fowler
James M. Heintz
Erin P. Gibson
Stanley J. Panikowski
Robert C. Williams
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA  92101
(650) 833-2048

Counsel for Appellees Eventbrite, Inc.
and Apple, Inc.

/s Lowell D. Mead
Lowell D. Mead
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304
(650) 843-5000

Counsel for Appellee Mobo Systems,
Inc.

/s J. Rick Taché
J. Rick Taché
GREENBERG TRAURIG LLP
3161 Michelson Dr., Suite 1000
Irvine, CA  92612
(949) 732-6500

Counsel for Appellee Best Western
International, Inc.

/s Jonathan S. Franklin
Jonathan S. Franklin
Richard S. Zembek
Gilbert A. Greene
Stephanie N. DeBrow
NORTON ROSE FULBRIGHT US LLP
799 9th Street, N.W.
Washington, D.C.  20001
(202) 662-0466

Counsel for Appellees Expedia, Inc.;
Fandango, LLC; Hotel Tonight, Inc.;
Hotwire, Inc.; Hotels.com, L.P.; Kayak
Software Corp.; Live Nation
Entertainment, Inc.; Orbitz, LLC;
OpenTable, Inc.; Papa John's USA, Inc.;
StubHub, Inc.; Ticketmaster, LLC; TVL
LP (formerly known as Travelocity.com
LP); and Wanderspot LLC

/s Frank A. Angileri
Frank A. Angileri
Thomas W. Cunningham
BROOKS KUSHMAN PC
1000 Town Center, 22nd Floor
Southfield, MI  48075
(248) 358-4400

Counsel for Appellees Domino's Pizza,
Inc. and Domino's Pizza, LLC

/s Jared Bobrow
Jared Bobrow
Brian Chang
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(605) 802-3034

Counsel for Appellee Oracle Corp.

/s David Lindner
Laura Beth Miller
David Lindner
BRINKS GILSON & LIONE
455 N. Cityfront Plaza Dr., Suite 3600
Chicago, IL  60611
(312) 321-4715

Counsel for Appellee Hyatt Corporation

/s Andrew P. Zappia
Andrew P. Zappia
LECLAIRRYAN
70 Linden Oaks, Suite 210
Rochester, NY  14604
(585) 270-2100

Counsel for Appellee Usablenet, Inc.

/s David M. Stein
David M. Stein
ALSTON & BIRD LLP
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
(213) 576-1000

Counsel for Appellees Hilton Resorts
Corp., Hilton Worldwide, Inc. and Hilton
International Co.

/s Anthony Nimmo
Anthony Nimmo
ICE MILLER LLP
200 West Madison, Suite 3500
Chicago, IL  60606
(312) 726-8149

Counsel for Appellee Agilysys, Inc.

/s Stanley J. Panikowski
John Guaragna
James M. Heintz
Stanley J. Panikowski
Robert C. Williams
DLA PIPER LLP (US)
401 Congress Ave.
Austin, TX  78701
(512) 457-7125

Counsel for Appellee Starwood Hotels
& Resorts Worldwide, Inc.

/s Nick G. Saros
Nick G. Saros
Michael Glenn Babbitt
JENNER & BLOCK LLP
633 W. 5th St., Suite 3600
Los Angeles, CA  90071
(213) 239-5175

Counsel for Appellee Marriott
International, Inc.

## DECLARATION OF AUTHORITY

Pursuant to Federal Circuit Rule 47.3(d), I certify that each of the other signatories shown above has authorized me to sign on their behalf this Brief for Appellees.

I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated:  October 30, 2015

/s/ Jonathan S. Franklin
Jonathan S. Franklin
NORTON ROSE FULBRIGHT US LLP
799 9th Street, N.W.
Washington, D.C.  20001
(202) 662-0466

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that this Brief for Appellees is proportionately spaced and contains 10,768 words excluding parts of the document exempted by Rule 32(a)(7)(B)(iii).

/s/ Jonathan S. Franklin
Jonathan S. Franklin
NORTON ROSE FULBRIGHT US LLP
799 9th Street, N.W.
Washington, D.C.  20001
(202) 662-0466

October 30, 2015

# CERTIFICATE OF SERVICE

I certify that on October 30, 2015, this Brief for Appellees was served on all counsel of record via the Court's CM/ECF system.

/s/ Jonathan S. Franklin
Jonathan S. Franklin
NORTON ROSE FULBRIGHT US LLP
799 9th Street, N.W.
Washington, D.C.  20001
(202) 662-0466